# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 16-cv-02547-RM-KMT

GOLDGROUP RESOURCES, INC.,

     Applicant,

v.

DYNARESOURCE DE MEXICO, S.A. DE C.V., and
DYNARESOURCE, INC.,

     Respondents.

---

## ORDER

---

At issue is whether the Court should confirm or vacate an arbitration award in favor of Applicant Goldgroup Resources, Inc. ("Goldgroup") and against Respondents DynaResource De Mexico, S.A. DE C.V. ("DynaMexico") and DynaResource, Inc. ("DynaUSA") (collectively, "DynaResources"), none of whom are citizens of Colorado. Goldgroup filed an application to confirm the arbitration award, while DynaResources filed a motion to vacate. (ECF Nos. 2, 21.) The Magistrate Judge issued a recommendation (ECF No. 49) to grant DynaResources' motion to vacate, to which Goldgroup has filed an objection (ECF No. 54). At first glance a reader may pause and wonder why this case is before the District of Colorado when none of the parties are citizens of the state of Colorado and the underlying events which gave rise to the parties' dispute did not occur here. The answer is simple: the arbitration was brought in Colorado pursuant to an Earn In/Option Agreement which expressly provides that "the party desiring arbitration shall

refer the dispute to binding arbitration in Denver, Colorado" and "the venue and jurisdiction for any dispute related to this Agreement shall be in Denver, Colorado."[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The parties are well versed with the lengthy history of this case, but the Court finds it must nonetheless discuss it more than briefly to address the issues raised. The relevant history of this case involves the following, in chronological order:

- *September 1, 2006:*

The parties entered into an Earn/In Option Agreement ("Option Agreement") governing, among other things, Goldgroup's option to purchase up to a 50% shareholder interest in DynaMexico until March 15, 2011. The Option Agreement contains an arbitration clause (the "arbitration agreement") which provides arbitration is to be had "under the Rules of the American Arbitration Association" in Denver, Colorado (Article 8.16(a)(b))[2]; a forum selection clause choosing Denver, Colorado as the forum for disputes "related to this Agreement" (Art. 8.5); and a provision that "Mexican law" applies "in respect to the shares of DynaMexico and the acquisition thereof" (Art. 8.5).[3]

- *December 2012:*

Disputes arose between the parties and DynaResources sued Goldgroup in Texas, Case No. DC-12-15031 (the "Texas Lawsuit"). Goldgroup defended by arguing, alternatively and among other things, the claims were subject to arbitration. DynaResources subsequently

---

[1] ECF No. 21-3, ¶¶8.5, 8.16(a)(b). As used in this Order, the ECF numbers refer to filings in this case unless it is preceded by "*Krieger Case*." If the ECF numbers are preceded by *Krieger Case*, the citations refer to filings found in the Colorado Federal Court Lawsuit, discussed hereafter, of which the Court takes judicial notice.
[2] The Court notes that not all parties in this case were parties in all other "related" cases, but the parties' arguments do not rely on any distinctions as to who was a party in which lawsuit. Thus, the Court assumes any such distinction is irrelevant.
[3] ECF No. 21-3, ¶¶8.5, 8.16.

dismissed this lawsuit in March 2014, and refiled it thereafter in Mexico.[4] That subsequently refiled lawsuit is discussed below as the "Mexico City Lawsuit."

- ***December 2013:***[5]

Goldgroup filed a lawsuit against DynaResources in Mazatlán, Mexico (the "Mazatlán Lawsuit") over, among other things, DynaMexico's alleged improper issuance in May 2013 of 300 shares of stock to DynaUSA thereby diluting Goldgroup's interest in DynaMexico. In addition, this lawsuit also raised issues of the validity of certain powers of attorney and of DynaMexico's 2012 financial statements.[6] In December 2013, the Mazatlán Lawsuit Court issued an injunction relating to the 300 DynaMexico shares.[7]

- ***March 10, 2014:***

Goldgroup made a demand for arbitration against DynaResources in Denver, Colorado (the "Colorado Arbitration") before the International Centre for Dispute Resolution of the American Arbitration Association (the "AAA") and, subsequently, an arbitrator (the "Arbitrator") was appointed to conduct the arbitration.[8]

- ***April 2014:***

On April 25, 2014, the AAA acknowledged DynaResources' April 10, 2014, objection to the arbitration and stated it would "continue to proceed with administrating this matter unless and until a court order staying the arbitration is presented, or the parties agreed to hold the

---

[4] *Krieger Case*: ECF No. 33, p. 3 at ¶8.
[5] The exact date of this filing is unclear. What is clear is that it was filed after May 2013, the time when DynaMexico issued shares to DynaUSA. In the Colorado Federal Court Lawsuit, DynaResources alleged it was filed in December 2013. (*Krieger Case*: ECF No. 33, ¶7.)
[6] ECF No. 35-9; No. 21-31, pp. 34-35 at ¶80.
[7] ECF No. 35-11, p. 5 of 50.
[8] ECF No. 21-12.

arbitration in abeyance. Otherwise, any matters with regard to jurisdiction are reserved for the Tribunal to decide."[9]

- *May 30, 2014:*

DynaResources filed a declaratory and injunctive relief lawsuit against Goldgroup in the District of Colorado before then Chief Judge Marcia S. Krieger, 14-cv-01527-MSK-KMT (the "Colorado Federal Court Lawsuit") seeking to prevent the Colorado Arbitration from proceeding. DynaResources asked Judge Krieger to stay the Colorado Arbitration pending resolution of arbitrability by courts in Mexico; or, alternatively, to declare the Option Agreement (and the arbitration agreement) terminated when Goldgroup exercised its final option to purchase DynaMexico's shares in March 2011, that the claims are not covered under Article 8.16 of the Option Agreement, and that Goldgroup's participation in and instigation of pending litigation in Mexico constitutes a waiver and estoppel to compel arbitration in Colorado.[10] DynaResources' argument that a valid arbitration agreement did not exist was premised on the alleged termination of the Option Agreement upon Goldgroup's and DynaMexico's full performance on March 15, 2011.[11]

The complaint was subsequently amended, but the relevant claims are essentially the same, except DynaResources requested an injunction until resolution of arbitrability by Judge Krieger or "the judicial authorities in Mexico," and argued waiver and estoppel due to Goldgroup's Mazatlán Lawsuit and alleged "admissions" in the Texas Lawsuit.[12]

---

[9] ECF No. 21-14; No. 21-15.
[10] ECF No. 21-23, p. 3.
[11] ECF No. 21-23, e.g., ¶¶27, 43, 45-48.
[12] *Krieger Case*: ECF No. 19, e.g., pp. 2-3.

- ***August 28, 2014:***

In the Colorado Arbitration, DynaResources requested, subject to its objection to arbitration, the Arbitrator to dismiss or stay the arbitration pending judicial proceedings before the Mazatlán Lawsuit and the Colorado Federal Court Lawsuit "concerning the arbitrability" of Goldgroup's claims.[13]

- ***September 30, 2014:***

By Procedural Order No. 1, after briefing by the parties, the Arbitrator determined that (1) he had jurisdiction to determine jurisdiction under Article 15 of the AAA's June 1, 2010, International Dispute Resolution Procedures (the "Rules") because the parties incorporated those Rules into the arbitration agreement; (2) Goldgroup's claims for unjust enrichment and conversion are not subject to arbitration; and (3) as permitted under the Rules, he would defer ruling on all other objections to arbitrability (including DynaResources' argument that Goldgroup waived the right to arbitrate) until the merits.[14]

---

[13] DynaResources argued: (1) all of Goldgroup's claims were the subject of and within the exclusive jurisdiction of the Mazatlán Lawsuit; (2) Goldgroup's Mazatlán Lawsuit acted as a waiver or estoppel to bar arbitration and the issue was one for the court; (3) the Arbitrator could not decide arbitrability unless the parties clearly and unmistakably agreed to do so, and they did not here; (4) there was no agreement to arbitrate post-option disputes, and Goldgroup admitted this in the Texas Lawsuit; (5) Goldgroup's claims did not fall within the arbitration agreement because they are not "questions or matters in dispute *under* this Agreement." (Emphasis in original.) In summary, DynaResources asserted whether Goldgroup's claims were arbitrable and who decided arbitrability were gateway issues for a court either in Mexico or the Colorado Federal Court Lawsuit. Thus, subject to its objection, DynaResources asked the Arbitrator to determine his own jurisdiction. (ECF No. 35-6.)

[14] ECF No. 21-19, pp. 4-5 at ¶¶1.a-1.c.

- ***December 2014:*** [15]

DynaResources refiled the Texas Lawsuit as a lawsuit in Mexico City, File No. 1120/2014 (the "Mexico City Lawsuit") which included a request, as relevant here, for "declaratory relief as to the invalidity of the arbitration provision in the 2006 Option Agreement in light of its inapplicability and Goldgroup's litigation conduct in Mexico"[16] or, as the Mexico City Court stated, DynaMexico requested a ruling that the Agreement is "ineffective and unenforceable" under Article 1424 of the Mexico Commercial Code. Thus, DynaResources filed a *second* action asking *another court* to determine whether it was subject to arbitration.

- **December 2014 – September 2015:**

Apparently all three matters (the Colorado Arbitration, the Colorado Federal Lawsuit, and the Mexico City Lawsuit) were pending. By now, the Arbitrator had determined he had jurisdiction to determine jurisdiction; and DynaResources had asked Judge Krieger *and then the* Mexico City Court to determine whether the arbitration may proceed, including the issue of waiver of the requirement to arbitrate under the arbitration agreement.

- **September 29, 2015:**

Judge Krieger, applying federal law,[17] issued an order ("Judge Krieger's Order") finding that there was no "expiration" of the Option Agreement and the parties' agreement to arbitrate disputes remained operative; that at least some of Goldgroup's claims were subject to arbitration;

---

[15] The date this lawsuit was filed is unclear. Regardless, based on the papers, DynaResources' request for the Mexico City Court to determine waiver was made after it filed its August 2014 request to dismiss or stay before the Arbitrator and after it filed the Colorado Federal Court Lawsuit. (*See, e.g.,* ECF No. 21-21, p. 35, section VII; No. 21-22, ¶9; No. 35-1, pp. 1, 5; *Krieger Case*: ECF No. 33, ¶¶8-9.)

[16] *Krieger Case*: ECF No. 33, ¶9.

[17] DynaResources had argued that Mexican law controlled the construction of the Option Agreement; the arbitration agreement only applied during the Option Agreement's 5-year term; and post-option disputes would be subject to Mexican law and heard in Mexico. (*Krieger Case*: ECF No. 29, pp. 3, 9-10.) It argued, however, *federal law* in evaluating whether waiver by litigation conduct occurred. (*Krieger Case*: ECF No. 29, pp. 59-62.) *See also* n.18, *infra*.

and that DynaResources' "litany of arguments" as to why the arbitration should not proceed (including the issue of waiver) were nearly all outside of that court's threshold arbitrability determination but were to be addressed by the arbitrator. DynaResources did *not* challenge whether the arbitration agreement was valid, illegal, or void; instead, the challenge was whether it was still *operative* in light of Goldgroup's completion of the option to purchase shares in DynaMexico,[18] which, as stated, Judge Krieger found was still operative.

- ***October 5, 2015:***

In the Mexico City Lawsuit, the Mexico City Court issued an order (the "Mexico City Order") finding that "the Parties in several occasions have tacitly submitted to the jurisdiction of jurisdictional courts," and declaring the arbitration agreement "ineffective and impossible [of] enforcement" as the parties by their voluntary submission to the courts in Mexico had "waiv[ed] the arbitration agreement."[19] The Mexico City Court declared the arbitration agreement "ineffective and impossible of enforcement" and, based on Article 1424 of the Mexican Commercial Code, it was "notoriously inefficient and unenforceable." The Mexico City Court did not find the arbitration agreement was "invalid."[20]

---

[18] There are statements in the Recommendation and DynaResources' papers about what Judge Krieger did or did not consider in her September 29, 2015, such as the legality of the arbitration agreement. What such statements neglect to consider is that, in the Colorado Federal Court Lawsuit, DynaResources did not challenge the arbitration agreement on the basis of invalidity or illegality under Mexican law. Instead, DynaResources argued waiver by applying U.S. law, relying on the six factors announced in *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467-68 (10th Cir. 1988). (*Krieger Case*: ECF No. 29, pp. 58-62.)

[19] ECF No. 21-1 at ¶33; No. 21-21. The Mexico City Court cited to three cases filed in Mexico, with the following record numbers: 289/2012; 67/2013; and 8/2014. The first was filed by DynaResources while the other two were filed by Goldgroup.

[20] *See* ECF No. 21-21.

- ***November 3, 2015:***

Goldgroup filed an amparo action (the "Amparo Action") challenging the October 5, 2015 Mexico City Order and whether service of process was effective in the Mexico City Lawsuit.[21]

- ***November 11, 2015:***

After being apprised of the Mexico City Order, the Arbitrator issued Procedural Order No. 5, denying DynaResources' application to suspend proceedings based on the Mexico City Order. The Arbitrator found that, notwithstanding the Mexico City Order, he could and would proceed with the arbitration, providing essentially four reasons for his decision.[22] First, the Arbitrator found the parties were bound by Procedural Order No. 1, as the parties submitted the arbitrability and jurisdiction question for his decision. Second, the parties were bound by Judge Krieger's September 29, 2015, decision of arbitrability and the jurisdiction of the Arbitrator. Third, as to the Mexico City Order, Goldgroup claimed it was never properly served and did not participate; AAA was apparently never properly served; this was DynaResources' third request in a third forum for a decision regarding arbitrability; the Mexico City Court was apparently not advised of Procedural Order No. 1 or Judge Krieger's September 29, 2015, Order; and it was directed at the AAA and not at the Arbitrator. Fourth, and finally, the Arbitrator found DynaResources was improperly forum shopping when it should have challenged the Arbitrator's and Judge Krieger's orders via the New York Convention or the Tenth Circuit, as appropriate.

---

[21] ECF No. 42-1, p. 40; No. 42-2, p. 23.
[22] ECF No. 21-19, pp. 20-25.

- ***November 16, 2015:***

The Arbitrator held a hearing on the merits in the arbitration. DynaResources did not appear, apparently taking the position that the Mexico City Court Order was "'way more mandatory than [the Arbitrator's] resolutions and even the Denver judge['s]…resolution.'"[23]

- ***April 11, 2016:***

DynaResources voluntarily dismissed the Colorado Federal Lawsuit under Fed. R. Civ. P. 41(a)(1)(A)(i),[24] effective without a court order. There is nothing in the record to show the Arbitrator was advised of this dismissal.[25]

- ***August 24, 2016:***

The Arbitrator issued the Final Award ("Award") in favor of Goldgroup and against DynaResources. As relevant here, the Arbitrator found/stated: (1) choice of law was not material to the issue of arbitral jurisdiction; (2) Mexican law applied to Goldgroup's substantive claims; (3) pursuant to Article 15 of the Rules, he had jurisdiction to resolve jurisdictional objections to the arbitration, the parties submitted to him the question of arbitrability and whether he had jurisdiction to decide the arbitrability issue, he decided he had jurisdiction in Procedural Order No. 1 and that was binding; (4) after arbitration commenced, DynaResources (for a third time, in a third forum) asked the Mexico City Court to declare the arbitration claims are not arbitrable[26] – DynaResources shuffled around until it found a decision maker who would rule in favor of its position; (5) after the hearing, DynaResources was given an opportunity to provide written comments or submissions on various matters but it did not do so; (6) Article 23 of the Rules allowed a party's failure to participate to be excused if there was sufficient cause, but there was

---

[23] ECF No. 21-31, p. 23 at ¶56 (quoting an email from DynaResources' counsel).
[24] ECF No. 21-29.
[25] *See* Award, ECF No. 21-31.
[26] The Arbitrator essentially repeated the same findings as that set forth in Procedural Order No. 5.

not here; (7) the Option Agreement and arbitration agreement are valid and enforceable; (8)

Mexican law did not prohibit the Option Agreement (or arbitration agreement); (9) Goldgroup

did not waive its right, under Mexican or U.S. law, to arbitrate by bringing the Mazatlán Lawsuit

or defending against the Texas Lawsuit; and (10) DynaResources breached the Option

Agreement and breached the duty of good faith implied in the Option Agreement, and awarded

Goldgroup damages and attorney's fees.

The Arbitrator found insufficient cause to excuse DynaResources' failure to participate

stating it submitted arbitrability for his decision; had no right to pursue arbitrability challenges in

the Mexico City Lawsuit due to Article 8.5 and 8.16 of the Agreement; and created the situation

of which it complained, *i.e.*, that the Mexican City Court's order allegedly precluded it from

participating.

- ***This Lawsuit to Vacate or Confirm***

After the issuance of the Award, Goldgroup filed this action seeking to confirm the

award. DynaResources responded with its request for vacatur and nonrecognition. Thereafter, by

Order dated August 24, 2017, Goldgroup's Amparo Action was dismissed based on untimeliness

of filing.[27] The Recommendation was issued subsequently; Goldgroup's Objection followed.

Due to the Recommendation's reliance on the Amparo Action, Goldgroup filed papers showing

it was appealing the dismissal of the Amparo Action. The status of that appeal is unknown.

## I.    LEGAL STANDARD

### A.  Review of Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ.

P. 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate

---

[27] ECF No. 42-1, 42-2.

judge's [recommendation] that has been properly objected to." In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* An objection is proper if it is filed timely in accordance with the Federal Rules of Civil Procedure and specific enough to enable the "district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In the absence of a timely and specific objection, "the district court may review a magistrate's report *under any standard it deems appropriate*." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted, emphasis added); *see* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

### B. Review of Arbitration Award

The parties apparently dispute the standard by which this court reviews the Award. Goldgroup argues the general standards apply while DynaResources contends a *de novo* review is required when the issue is whether a valid and enforceable arbitration agreement exists. As discussed below, that is not an issue. Thus, the Court applies the general standards. But, DynaResources should rest assure the Court will not "rubberstamp" the Award.

A court's review of an arbitration award under the Federal Arbitration Act ("FAA") is "strictly limited"; a "highly deferential" standard described as "among the narrowest known to the law." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001) (quotation marks and citation omitted). *See also CEEG (Shanghai) Solar Science & Tech. Co., Ltd. v. Lumos LLC*, 829 F.3d 1201, 1206 (10th Cir. 2016) ("among the narrowest known to the law" (quotation

marks and citation omitted)). Thus, the reviewing court affords "maximum deference to the arbitrators' decisions." *CEEG*, 829 F.3d at 1206 (quotation marks and citation omitted).

"Errors in either the arbitrator's factual findings or his interpretation of the law (unless that interpretation shows a manifest disregard of controlling law) do not justify review or reversal on the merits of the controversy." *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018) (brackets, quotation marks, and citation omitted). While the arbitrator may not ignore the plain language of the contract, "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" *CEEG*, 829 F.3d at 1206 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). "'The arbitrator's construction holds, however good, bad, or ugly.'" *THI of N. Mex. at Vida Encantada, LLC v. Lovato,* 864 F.3d 1080, 1084 (10th Cir. 2017) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013)).

The party defending against enforcement of the arbitral award – the party seeking vacatur – bears the burden of proof. *Youngs v. American Nutrition, Inc.*, 537 F.3d 1135, 1141 (10th Cir. 2008) (citing *Ormsbee Development Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982)). *See also* Panama Convention, art. 5(1) (recognition of award may be refused only if the requesting party is able to prove one of the accepted bases for nonrecognition). "That burden is very great." *Youngs*, 537 F.3d at 1141 (citation omitted).

## II.   ANALYSIS

### A.  The Recommended Disposition

The Magistrate Judge stated the issue was "'Which order prevails?'" and found the Mexico City Order did. Accordingly, she recommended vacatur of the Award under § 10 of the

FAA. As relevant here, the Recommendation was based on the following findings and conclusions made by the Magistrate Judge.

First, that Procedural Order No. 5 was incorrect based on the history of the litigation, "especially with the clarification of proceedings provided by the Amparo Order to which the Arbitrator was not privy."[28] Thus, based on the Magistrate Judge's factual findings, which were contrary to that found by the Arbitrator, the Magistrate Judge concluded (1) DynaResources did not engage in improper forum shopping but, instead, properly brought the Mexico City Lawsuit to contest the legality and applicability of the arbitration clause; and (2) the Mexico City Lawsuit was properly pending at the same time as the Colorado Federal Court Lawsuit, and Goldgroup was well aware of both cases.

Next, that Goldgroup voluntary and knowingly proceeded with the ancillary proceeding (the Amparo Action) challenging service rather than addressing the merits of the Mexico City Lawsuit.

Third, that the Mexico City Court found the arbitration agreement was unenforceable (i.e., invalid). And, "[w]ithout a *valid* arbitration clause," neither the New York nor Panama Convention were applicable. (ECF No. 49, p. 28 (emphasis added).)

Fourth, that Judge Krieger's Order was not final (and was based on a presumably valid Option Agreement with a presumably valid arbitration clause) and the Mexico City Order changed the Colorado Federal Court Lawsuit dramatically.[29]

In summary, the Recommendation stated the Mexico City Order determined the parties waived their agreement to arbitrate rendering the arbitration clause *invalid*; thus, the arbitration

---

[28] Indeed, the Amparo Order did not even exist at the time Procedural Order No. 5 was issued.
[29] This finding assumes the Mexico City Order took precedent over Judge Krieger's Order – even at a time when the Colorado Federal Court Lawsuit was still pending and to which the parties were still bound.

was unauthorized and must be enjoined. Therefore, according to the Recommendation, the Award is subject to vacatur under 9 U.S.C. § 10(a)(3)[30] and (a)(4) as the Arbitrator engaged in misconduct and exceeded his powers in proceeding with the arbitration and entering an award.

### B. Goldgroup's Objection

Goldgroup raises several arguments in its Objection, to which DynaResources counters with more, including the argument that Goldgroup waived some objections. Goldgroup's reply asserts to the contrary. The Court addresses the arguments in turn, but not necessarily in the order raised.

#### 1. Objections – No Waiver by Goldgroup

DynaResources asserts Goldgroup has waived several findings and conclusions in the Recommendation because it failed to object to them. Goldgroup argues no waiver has occurred. The Court agrees.

The Court finds that while Goldgroup's objections may not have specifically identified each and every one of the Recommendation's findings and conclusions it challenged, its Objection and Reply were specific enough to apprise the Court of the heart of the parties' dispute. Moreover, even in the absence of any objection, the Court may review the Recommendation under any standard. As discussed herein, the Court finds clear error in some of the findings and conclusions, and elects to conduct a de novo review of other findings and conclusions.

#### 2. The Lack of Any Standards

Goldgroup argues the Recommendation fails to cite to, much less correctly apply, the legal standards. The Court agrees, at least in part. Here, the Recommendation fails to set forth

---

[30] It is unclear to the Court whether the Recommendation was also based on § 10(a)(3), but as the parties present arguments regarding § 10(a)(3), the Court assumes it was so.

what standards were applied; hence, the Court is unable to determine if the Recommendation applied the correct standards and placed the proper burden on the proper party. This is demonstrated by, for example, the Recommendation's reliance on the Mexico City Order and finding the Mexico City Court had authority to decide the issue of waiver without any discussion as to how or why, especially when the parties agreed that the forum for any dispute concerning the Agreement was to be heard – and for any arbitration to be held – in Denver, Colorado.

### 3. The Mexico City Order – No Finding of Invalidity

The Court starts with the Mexico City Order, what the Recommendation stated such Order found, and what the Court finds, as it affects the merits of the parties' other arguments.

DynaResources argues the Recommendation found the Mexico City Court determined the arbitration agreement was invalid and unenforceable, and by failing to object to certain findings and conclusions in the Recommendation, Goldgroup implicitly concedes there was no enforceable arbitration agreement. The Court finds otherwise.

First, Goldgroup did not concede there was no enforceable arbitration agreement.[31] Instead, its Objection argues the issue is whether there was a waiver of the right to arbitrate under the arbitration agreement, not whether a valid arbitration agreement existed. Goldgroup sufficiently took exception to the Recommendation's determination otherwise, *i.e.*, that the arbitration agreement no longer existed.

Second, whether a valid arbitration agreement ever existed was not at issue in the Mexico City Lawsuit and the Mexico City Order never found the arbitration agreement was *invalid*. As the Recommendation recognized, the Mexico City Order stated the arbitration agreement was "inefficient and unenforceable" as it had been "tacitly waived" by the parties. From this, the

---

[31] Even assuming, *arguendo*, Goldgroup failed to object, the Court's review of the Mexico City Order shows clear error in the Recommendation's findings concerning that order and its effect.

Recommendation found the Mexico City Court determined the arbitration agreement was "invalid" in the sense that it never existed (or, if it did, it no longer did). DynaResources took it one step further and said the arbitration agreement was "void."[32] DynaResources speaks of "leapfrogs"[33] but the Court finds any leaping here was performed by the Recommendation (leaping from unenforceable to invalid) followed by DynaResources (leaping to "void"). Accordingly, the Court finds the Recommendation erred in determining the Mexico City Court found the arbitration agreement was invalid, *i.e.*, there was no agreement to arbitrate.[34] Instead, the Mexico City Court discussed how an arbitration agreement that is "created as valid" would "stop[] having effect."[35] And, one basis by which an arbitration is ineffective is "if there is a waiver by both parties thereto."[36] And, based on its review, the Mexico City Court determined the arbitration agreement was "tacitly" waived under the Mexico Commercial Code and, therefore, unenforceable.[37] There was no finding of invalidity. Accordingly, the Recommendation is rejected on this basis.

---

[32] Response, ECF No. 57, p. 18. The record shows it is not so.

[33] In referring to Goldgroup's arguments. (ECF No. 57, p. 15.)

[34] Perhaps the "confusion" may be attributable to the parties' apparent interchangeable use of the words invalid/valid and unenforceable/enforceable, and the inexact (or imprecise) use of the word valid/invalid in this context. Under the FAA, "the Act cares not only about the 'enforcement' of arbitration agreements, but also about their initial 'validity'—that is, about what it takes to enter into them." *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1428 (2017) (internal brackets omitted).

DynaResources argues there must be a "valid, irrevocable, and enforceable" arbitration agreement under 9 U.S.C. § 2 and, here, the Magistrate Judge and the Mexico City Court found there was not. Section 2, however, actually states "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such *grounds* as exist at law or in equity for the *revocation* of any contract." (Emphasis added.) No one has shown – by argument or legal authority – that waiver by litigation conduct as claimed here is such a ground.

[35] ECF No. 21-21, p. 39.

[36] ECF No. 21-21, p. 39.

[37] ECF No. 21-21, pp. 41-43.

If this were the sole basis for the Recommendation, the Court's rejection of this finding would result in the rejection of the Recommendation in toto.[38] But, as it was not, the Court addresses the remaining arguments.

### 4. The Recommendation engaged in improper independent fact finding

Goldgroup asserts this Court should not defer to *any* factual findings made in the Recommendation as they are not tied to 9 U.S.C. §§ 10(a)(3) and 10(a)(4). Even if the Court were to defer, Goldgroup asserts the Recommendation should still be rejected because it improperly revisits the Arbitrator's findings and makes inappropriate and clearly erroneous recommendations. DynaResources argues Goldgroup objects only to four findings.[39] As to the first three, DynaResources contends, they are based on findings of Goldgroup's "misleading statements" and the like to which Goldgroup did *not* object. As to the fourth finding, they are too general and, therefore, waived. The Court finds otherwise.

First, the Supreme Court has long stated "[t]he courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Misco, Inc.*, 484 U.S. at 36; *see also CEEG*, 829 F.3d at 1206 (same). Thus, the Tenth Circuit has said "the factual findings of the arbitrator are insulated from judicial review." *Denver & Rio Grande W. R. Co. v. Union Pac. R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997). *See Hermanns v. Albertson's, Inc.,* 203 F. App'x 916, 919 (10th Cir. 2006) (Where arbitrator made factual determinations that were within his authority, it was "outside ours [the court] to question.").

---

[38] And the rejection of DynaResources' arguments as they almost hinge entirely on the correctness of the Recommendation's determination that the Mexico City Court found the arbitration agreement was invalid due to waiver.
[39] *See* III.B.1, *supra*.

In this case, the Recommendation made factual findings which were not only contrary to those found by the Arbitrator but also based (at least in part) on matters which were decided *after* the Award and were not before the Arbitrator. Thus, for example, the Arbitrator found DynaResources was engaged in improper forum shopping, but the Recommendation found the Arbitrator's factual findings were incorrect and it was Goldgroup who made misleading statements. Next, the Recommendation appears to fault the Arbitrator for relying on Judge Krieger's Order as that case was ultimately voluntarily dismissed. But, at the time the Arbitrator relied on Judge Krieger's Order it was in effect. The Colorado Federal Court Lawsuit was subsequently dismissed, but there is nothing in the record to show the Arbitrator was aware of this fact when he issued his Award. Accordingly, the Court rejects this entire line of findings and all other factual findings of the Recommendation which disagreed with or rejected the factual findings of the Arbitrator.

The Court's rejection of the Recommendation's nonacceptance of the factual findings of the Arbitrator, however, is a different issue than whether the Court rejects the Recommendation's factual findings which support its reasons for granting DynaResources' motion for vacatur. *Denver & Rio Grande W. R. Co.*, 119 F.3d at 849 (A court "may make its own factual findings regarding the reasons for which the motion to vacate should be denied or granted."). Here, too, however, the Court finds it must reject some of these factual findings as they are unsupported by the record or would require the Court to speculate.

Thus, for example, the Court rejects the Recommendation's findings as to why Judge Krieger issued a show cause order or why Goldgroup did not file a motion for summary

judgment in the Colorado Federal Court Lawsuit.[40] The Court also rejects the findings concerning Judge Krieger's Order to the extent they serve to support a recommendation that her Order should be discounted or disregarded in evaluating whether to vacate or confirm the Award. Thus, for example, the Court rejects any finding that Judge Krieger's Order should not be considered because she did not address the illegality of the arbitration agreement. After all, DynaResources never argued before Judge Krieger that the Option Agreement was illegal and, further, the Mexico City Order did not find the arbitration agreement was illegal. In summary, the Court also rejects any factual findings which are inconsistent with the Court's findings and conclusions in this Order.

### 5. A court decides waiver of an agreement to arbitrate under U.S. law

As stated, the Mexico City Court found an arbitration agreement existed. It also found the parties tacitly waived any contractual right to arbitrate. Which brings the Court to the next issues raised by the parties' dispute: (i) who decides whether waiver of an arbitration agreement has occurred – a court or an arbitrator; (ii) if a court, which court; and (iii) under what law, Mexican or U.S.?

The Mexico City Court decided it had jurisdiction to do so. Judge Krieger decided the arbitrator did, and the Arbitrator reached the same conclusion. DynaResources contends the courts decide, and the Mexico City Court had authority to do so. Goldgroup argues the decision was for an arbitrator, under U.S. law. The parties dispute which law (Mexican or U.S.) applies in determining whether waiver of the arbitration agreement occurred but apparently do not dispute that U.S. law applies in determining whether waiver is an issue for a court or an arbitrator.

---

[40] Based on the Court's reading of Judge Krieger's September 29, 2015 show cause order, the "claims" she was referring to were DynaResources' claims. Judge Krieger issued an order to show cause why she should not enter judgment in favor of Goldgroup on *DynaResources'* claims.

Goldgroup provides three reasons why the Recommendation erred in deciding the Mexico Court could determine waiver under Mexican procedural law. The Court addresses them in turn, but starts with DynaResources' first argument directed to all of Goldgroup's reasons.

### a) The Arbitrator's authority and the absence of an "enforceable" arbitration clause

DynaResources argues that in the absence of an enforceable arbitration agreement – by that, it means the Recommendation found there is no such agreement – the Arbitrator had no authority to decide anything, including waiver. As the Court has rejected this recommended finding, this argument fails.

### b) Who decides waiver based on alleged litigation conduct: an arbitrator or a court

Relying on U.S. law, Goldgroup contends that issues of waiver through external conduct (conduct not before the court determining waiver) are for an *arbitrator* – thus the Mexico City Court was not the proper forum. DynaResources contends that, contrary to Goldgroup's argument, there is no external/internal waiver distinction. Instead, DynaResources argues, substantive waiver based on litigation conduct (as opposed to waiver as a procedural precondition to arbitration) is a question for the court.

Facially, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) and *BG Grp. PLC v. Rep. of Argentina*, 572 U.S. 25 (2014) appear to have resolved the issue as the Supreme Court stated the presumption is that the parties intend arbitrators should decide "waiver, delay, or a like defense to arbitrability." *Howsam*, 537 at 84 (quotation marks and citation omitted); *BG Grp. PLC*, 572 U.S. at 34-35 (quotation marks and citation omitted). But, subsequent decisions show the reach of this statement is in dispute. Within the Tenth Circuit, there is no controlling decision on this issue and the courts in this District appear to have gone both ways as to the application of

*Howsam*.[41] The Court finds, however, that under the Tenth Circuit's analysis in *Pre-Paid Legal Servs. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015), the waiver at issue here is one for the court.

In *Pre-Paid Legal Services*, Pre-Paid sued Cahill who moved to stay the proceedings under the FAA so the parties could arbitrate. The district court did so but Cahill failed to pay his share of the arbitration fees; therefore, the arbitration proceedings were terminated. The district court granted Pre-Paid's motion to lift the stay as it found the arbitrators' actions showed they considered Cahill's failure to pay to be a default in arbitration. On appeal, the Tenth Circuit found the district court's lifting of the stay[42] under § 3 of the FAA[43] was permissible as Cahill was "in default in proceeding with [the] arbitration." *Id.* at 1294 (brackets in original). Cahill, however, argued that whether he was in default was a question for the arbitrator to decide, not the court. In finding otherwise, the Tenth Circuit distinguished *Howsam* and cited with approval to *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1 (1st Cir. 2005).

The Tenth Circuit found *Howsam* distinguishable because it dealt with a National Association of Securities Dealers' rule about time limits which was part of the arbitrator's *own rules*, and was not contained in a federal statute like § 3. As for *Marie*, there the First Circuit found "default" under § 3 included "waiver," and whether a party "had waived its right to arbitrate due to inconsistent activity in another litigation forum" was an issue for the court in cases where a stay is sought. *Pre-Paid Legal Servs.*, 786 F.3d at 1295-96. The Tenth Circuit's

---

[41] And it appears the Circuit Courts have also differed in their analysis. *See, e.g., Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 11-13 (1st Cir. 2005) (discussing various courts' decisions); *Blanco v. Sterling Jewelers Inc.*, No. 09-cv-01330-CMA-KLM, 2010 WL 466760, at *3 (D. Colo. Feb. 9, 2010) (collecting cases, recognizing decisions are not unanimous).

[42] The Tenth Circuit found Cahill sought a stay of his own under 9 U.S.C. § 3 in his response in opposition to Pre-Paid's motion to lift the stay.

[43] Section 3 provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

analysis and considerations show that *Howsam* is inapplicable here because the waiver at issue does not deal with the AAA rules or something analogous. Instead, the waiver at issue involves litigation conduct and a court is comparatively more of an expert (than an arbitrator) about what litigation conduct is sufficient to waive a party's right to arbitration, even if the alleged conduct occurred in another court.[44] Therefore, the Court finds the issue of waiver is to be decided by a court.[45] The issue remains, however, as to which court. That issue is addressed below.

### c) *The Mexico City Court's jurisdiction to enjoin the Arbitrator or nullify the Award*

Goldgroup's second argument is that the Mexican City Court had no jurisdiction to enjoin the arbitration proceedings or preemptively nullify the Award because an award can only be suspended by the court of the country where the arbitration occurred or of the country whose procedural law was invoked in the contract. In addition, Goldgroup asserts the parties agreed to arbitrate in the United States. DynaResources counters this argument is a red herring as the issue is whether there is a legally enforceable arbitration clause. The Mexico City Court found it was void and unenforceable – therefore the Arbitrator could not proceed – and that is the basis for DynaResources' requests to vacate the Award.

As previously stated, the Court rejects any finding in the Recommendation that the Mexico City Court found the arbitration agreement was void or invalid. Thus, DynaResources' argument here falls short of carrying its burden that the Award should be vacated. Moreover,

---

[44] As the parties have not argued otherwise, the Court assumes, without deciding, that litigation conduct in one court (or forum) may serve to waive arbitration in another court. *See In re Cox Enters., Inc. Set-Top Cable Tele. Box Antitrust Litig.*, 790 F.3d 1112, 1121 (10th Cir. 2015) (expressing no opinion on whether conduct in another litigation would be relevant to waiver of right to arbitrate in instant case or any other).

[45] The Court expresses no opinion on whether the parties could agree to arbitrate the issue of waiver, via the AAA rules or otherwise, as that issue is not before it. The Court reaches the conclusion here based on the arguments at hand.

even if that were the case (which it is not), that begs the question of whether the Mexico City Court *could* enter such an order and enjoin the arbitration proceedings or nullify the Award.

To start, the question Goldgroup raises is whether the Mexico City Court could act. Goldgroup relies, in part, on article 5(1)(e) of the Panama Convention which provides the arbitration's "decision" may not be recognized if it has been "annulled or suspended" "by a competent authority of the State in which, or according to the law of which, the decision has been made." To the extent DynaResources contends the Mexico City Court effectively annulled or suspended the Award,[46] such that it cannot be confirmed, the Court agrees with Goldgroup that is not permitted under art. 5(1)(e). However, if the Mexico City Court did not effectively annul or suspend the Award, art. 5(1)(e) does not apply. But, that nonetheless does not end the analysis.

Goldgroup also argues, correctly, that underlying the Recommendation is an assumption the parties could turn to any court in Mexico. The Recommendation found the Mexico City Court could enjoin the arbitration, but cited no case law and provided no legal analysis to assist the Court. Similarly, DynaResources cites to no legal authority that the Mexico City Court could enjoin the arbitration, i.e., decide the issue of waiver. The *caption* to this section of DynaResources' Response states the Mexico City Court was the proper forum but its *arguments* do not address this issue. Thus, the Court is left with only a showing the Mexico City Court did do so, not that it *could* do so. But the burden is on the party seeking to vacate the award, and DynaResources fails to meet this burden. Indeed, the Arbitrator found DynaResources had no right to pursue arbitrability challenges in the Mexico City Lawsuit due to Article 8.5 and 8.16 of the Agreement – both Articles provide that "venue and jurisdiction" are to be had in *Denver,*

---

[46] Assuming, for the purposes of this argument, that effective nullification falls within art. 5(1)(e). *See* III.C.3.d) discussing the parties' other argument concerning art. 5(1)(e).

*Colorado*. Judge Krieger recognized this as well, stating, "[t]he Court notes that, notwithstanding Dyna Mexico's insistence in its bylaws that all disputes be resolved in Mexico, it voluntarily entered into the Option Agreement calling for disputes thereunder to be resolved in the United States."[47] The Court agrees.

### d) *Which law applies - United States procedural law or Mexican law*

Goldgroup's third argument is that, assuming the Mexico City Court had jurisdiction, the Mexico City Court failed to apply the correct law, U.S. procedural law, in deciding waiver. As the Court has found DynaResources fails to show the Mexico City Court could decide the dispute, the Court need not reach this issue. Nonetheless, the Court does so to have a complete record.

Goldgroup asserts the parties agreed to apply Mexican substantive law to the claims in arbitration, but never agreed to apply Mexican procedural law; the procedural law of the place designed for arbitration is the presumptive procedural law which applies, *i.e.*, here, U.S. procedural law; the Recommendation cites no law for its conclusion that Mexican procedural law applies to the issue of waiver of a U.S. arbitration; and, even, if a foreign nation's substantive law applies, U.S. courts and arbitrators are well-equipped to do so. DynaResources counters Goldgroup's argument that U.S. procedural law, rather than Mexican law, applies has been waived as it is raised for the first time in the Objection. Even if not waived, it is incorrect as § 8.5 of the Agreement provides that Mexican law is controlling and the Arbitrator's opinion on the enforceability of the arbitration agreement does not trump the Mexico City Court's contrary finding.

---

[47] *Krieger Case*: ECF No. 39, p. 14 n.8.

The Court finds no waiver because Goldgroup raised the argument before the Magistrate Judge.[48] Moreover, § 8.5 of the Agreement states that it is "[s]ubject to the applicability of Mexican law in respect to the shares of DynaMexico and the acquisition thereof,"[49] which DynaResources has not shown covers the issue at hand, i.e., waiver of the right to arbitrate. Thus, DynaResources' argument is futile; they fail to show that Mexican law applies. Instead, the Court agrees with Goldgroup that U.S. procedural law applies in determining whether there has been a waiver. *See Blanco v. Sterling Jewelers Inc.*, No. 09-cv-01330-CMA-KLM, 2010 WL 466760, at *4 (D. Colo. Feb. 9, 2010) (waiver a question of federal law).[50] And, further, even assuming Mexican substantive law applies, the courts in the United States are equipped to apply such law. But, that did not happen here.

### e) Summary

In summary, waiver was – and is – a question for a court in Denver, Colorado, applying U.S. law. Even if Mexican law was to be applied, it is to be applied by a court in Denver, Colorado. Waiver is not before this Court, and no court in this District has rule on the matter and found waiver. There being no waiver found by the correct court, there is no vacatur which can be premised on waiver. Thus, Goldgroup's objections are overruled in part and sustained in part. Therefore, to the extent the Recommendation's finding and conclusions are contrary to the Court's findings and determinations, they are rejected.

---

[48] ECF No. 35, pp. 31-32.
[49] ECF No. 21-3, p. 15.
[50] As stated, DynaResources relied on U.S. law in its waiver argument in the Colorado Federal Court Litigation. (*Krieger Case*: ECF No. 29, pp. 59-62.)

### 6. The Recommended Vacatur

The Recommendation found that vacatur was proper under § 10(a)(4) and, perhaps, under § 10(a)(3). The Recommendation was based on a finding that the Arbitrator exceeded his power or was guilty of misconduct because he refused to postpone the hearing and entered the award. This finding, however, was based on the Recommendation's determination that the Mexico City Order controlled and found the arbitration agreement was invalid. The Court has rejected both of such findings and, accordingly, the Recommendation must fall. Thus, it matters not whether the Recommendation was correct in determining that vacatur may be had under § 10, the domestic FAA. Nonetheless, the Court finds it must address the domestic FAA because DynaResources relies on various subsections in, and arguments under, § 10 as bases for vacatur.

#### a) *Whether the domestic FAA applies*

Goldgroup argues that when one of the Conventions applies, it provides the sole grounds for vacatur; therefore, the domestic FAA (Chapter 1)[51] and common law grounds are inapplicable. Thus, the Magistrate Judge erred in relying on the domestic FAA to recommend vacatur. DynaResources argues to the contrary, citing to *Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account,* 618 F.3d 277 (3rd Cir. 2010), which relied on the Second Circuit's opinion in *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2nd Cir. 1997).[52] The Recommendation cited no law in support of its findings, the parties provide no controlling legal authority on the issue, and the Court's independent research reveals none.[53] Nonetheless, the Court has considered the cases and arguments of the parties and

---

[51] The FAA contains three Chapters. Chapter 1 applies to domestic arbitrations (9 U.S.C. §§1-16), while Chapters 2 (9 U.S.C. §§ 201-208) and 3 (9 U.S.C. §§ 301-307) incorporate the New York Convention and Panama Convention, respectively.

[52] The parties' arguments show they agreed, and continue to agree, the analysis would be the same under either Convention.

[53] The Court recognizes that in *CEEG,* 829 F.3d at 1206-07, the Tenth Circuit cited to *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005), relied on by Goldgroup, which stated that a

finds it agrees with the Third Circuit's decision in *Ario*, which relied on the Second Circuit's opinion in *Yusuf*.[54, 55]

Under the Panama Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (incorporated by reference by 9 U.S.C. § 302). The Panama Convention sets forth seven (7) grounds on which recognition and execution of an award may be refused. *See* Panama Convention art. 5(1)(a)-(e) & 5(2)(a)-(b). Under article 5(1)(e) of the Panama Convention, a court may refuse to recognize an award ("decision") if that decision "has been annulled or suspended by competent authority of the State in which, or according to the law of which, the decision has been made." In this case, the decision was made in the Unites States; therefore, the "State" "in which the decision has been made" would be the United States. Thus, under this article, where the award is made in the United States, "the courts of the United States are authorized to apply United States procedural arbitral law, i.e., the domestic FAA, to nondomestic convention awards rendered in the United States," *Ario*, 618 F.3d at 291-92 (quoting *Yusuf* (brackets and quotation marks omitted)). Accordingly, the Panama Convention specifically contemplates the courts in the United States may set aside (annul or suspend) an award "'in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief.'" *Ario*, 618 F.3d at 291 (quoting *Yusuf*, 126 F.3d at 23).

---

district court was "strictly limited to the seven defenses under the New York Convention when determining whether to confirm a foreign award," thereby declining to read into the New York Convention additional FAA defenses. *Id.* at 92. *CEEG*, however, did not cite to *Encyclopaedia Universalis S.A.* for *that proposition*, and whether the defenses were so limited was not at issue.

[54] To the extent there is an issue of whether this holding is called into question even by the Second Circuit itself, *see RZS Holdings AVV v. PDVSA Petroleos S.A.*, 598 F. Supp. 2d 762, 767 (E.D. Va. 2009) (questioning whether the holding was still viable), *Yusuf* was relied upon by the Second Circuit more recently in *Zurich American Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2nd Cir. 2016) ("The award in this case having been rendered in the United States, available grounds for vacatur include all the express grounds for vacating an award under the FAA." (citing *Yusuf*, 126 F.3d at 23)).

[55] That is not to say this Court agrees with everything said in *Yusuf*.

This authority to apply domestic arbitral law is also consistent with 9 U.S.C. § 307. Section 307 allows Chapter 1 (the domestic FAA) to apply to the extent it does not conflict with the Panama Convention. As the *Ario* court recognized, there is no conflict "[w]hen both the arbitration and the enforcement of an award falling under the Convention occur in the United States," *Ario*, 618 F.3d at 292, because article 5(1)(e) of the Panama Convention incorporates the domestic FAA by allowing awards to be "annulled or suspended by a competent authority of the State in which ... that decision has been made." *See Ario*, 618 F.3d at 292.

Although the Court finds these defenses also apply, via the Convention, it recognizes the defenses are to be construed "'narrowly, to encourage the recognition and enforcement of commercial arbitration agreements in international contracts.'" *CEEG*, 829 F.3d at 1206 (quoting *Karaha Bodas Co. v. Perusahaan*, 364 F.3d 274, 288 (5th Cir. 2005)). And, further, the party opposing the confirmation of the arbitration award bears the burden of proving the defenses claimed apply. *Id.*

### b) *If the FAA applies, whether the Recommendation misapplied the standard*

#### (1) Limited Scope of Judicial Review

Goldgroup contends the Recommendation never mentions and ultimately ignores the deferential standard of review of an arbitration award in determining vacatur under the FAA. DynaResources argues Goldgroup's cases are inapposite as a *de novo* review applies to decisions regarding whether a valid and enforceable arbitration agreement exists. As the Court finds that is not at issue, DynaResources' argument is unavailing. Thus, the Court finds the deferential standard applies and the Recommendation failed to apply this standard.

## (2) Vacatur under § 10(a)(4)

Goldgroup raises three arguments as to why the Recommendation erred in concluding the Arbitrator exceeded his authority in deciding the issue of waiver or in continuing with the arbitration after receiving the Mexico City Order. First, the Arbitrator properly decided it could decide waiver and reasonably decided the waiver issue.[56] Second, neither DynaResources nor the Recommendation cited any authority establishing the U.S. arbitrator must halt proceedings when a foreign court purports to enjoin it and no explanation was given as to why a foreign ruling is entitled to deference in a U.S. arbitration. Finally,[57] Goldgroup argues the Arbitrator's "apparent interpretation" of the AAA's statement that it would proceed with the arbitration "unless and until a court order staying the arbitration is presented" meant a court *with jurisdiction* is reasonable.

DynaResources responds Goldgroup's arguments rely on the presumption that the Arbitrator's decisions were permissible after Judge Krieger's Order, ignoring the Recommendation's findings to which Goldgroup fails to object. Therefore, according to DynaResources, Goldgroup cannot complain of the Recommendation's conclusion (based on such findings) that the Arbitrator exceeded his authority in violation of § 10(a)(4).

As stated above, Goldgroup did object to the Recommendation's numerous findings and conclusions. The question, instead, is whether Goldgroup's objection shows the Recommendation erred in finding that the Arbitrator exceeded his authority.

The Recommendation found the Arbitrator should not have proceeded with the arbitration stating Judge Krieger's Order was not final, there was a "change in legality" of the

---

[56] The Arbitrator stated he found no waiver, under either Mexican law or U.S. law. (ECF No. 21-31, pp. 41-42 at ¶97.)
[57] ECF No. 54, n. 10.

Agreement (i.e., the Mexico City Order found the Agreement was invalid and unenforceable), and the Mexico City Order enjoined the arbitration proceeding.[58] But, the Court has determined the Mexico City Order did not make such a finding; DynaResources fails to show the Mexico City Court could decide the issue; and U.S. procedural law applies as to whether there has been a waiver. And, in light of such determinations, the fact that Judge Krieger's Order was not final does not support a finding the Arbitrator exceeded his powers. Thus, the Recommendation of vacatur on the bases given is rejected.

That, however, does not end the inquiry. DynaResources[59] raised a litany of other arguments for nonrecognition of the Award under § 10(a)(4) which the Court needs to address.

First, DynaResources argues the Arbitrator exceeded his powers when he proceeded in light of AAA's statement that the arbitration would continue "unless and until a court order staying the arbitration is presented."[60] DynaResources provides no legal authority and Goldgroup's cases are unpersuasive as the cases generally deal with issues such as whether the arbitrator interpreted the parties' contract correctly, or acted within the scope of his contractually delegated authority. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). Thus, the Supreme Court has stated "[o]nly if the arbitrator acts outside the scope of his contractually delegated authority – issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract – may a court overturn his determination." *Sutter*, 569 U.S. at 569 (quotation marks, citation, and alterations omitted). Here, however, the authority (power) which the Arbitrator allegedly exceeded was that of his (the AAA's) own

---

[58] ECF No. 49, pp. 30-31.
[59] In the papers in response to the Recommendation, as well as the papers before the Magistrate Judge. The Recommendation did not consider (and need not have considered) other bases raised by DynaResources in light of its determination. As the Recommendation on the bases relied upon was rejected, the Court considers the other arguments that were raised but not addressed.
[60] ECF No. 21-15, p. 2.

unilateral making, not upon some agreement by the parties. And, the Arbitrator made the decision that the AAA created limitation did not preclude him from acting only after consideration of the facts (as he found them). In the absence of any legal authority to support such action equates to "exceed[ing] [his] powers" under § 10(a)(4), upon which DynaResources bears the heavy burden of showing, *Sutter*, 569 U.S. at 569, the Court finds no basis for vacatur on this basis.

Second, DynaResources contends the Arbitrator exceeded his powers by determining that he had authority to determine whether Goldgroup waived the arbitration clause. But, as the Court discussed above, there is no controlling Tenth Circuit decision on this issue. Further, by the time the Arbitrator issued Procedural Order No. 5, he had Judge Krieger's Order which also stated the issue was for the arbitrator. And, while the Colorado Federal Court Lawsuit was ultimately voluntarily dismissed without prejudice by DynaResources, that was after the issuance of Procedural Order No. 5 and there is no record evidence the Arbitrator was advised of this dismissal at any time. Moreover, as Goldgroup had argued before the Magistrate Judge, the Arbitrator decided the waiver issue after conducting a detailed analysis which included the governing ICDR Rules. And, under Article 15 of the Rules, which the Arbitrator found the parties incorporated by reference, "[t]he arbitrator shall have the power to rule on his own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Thus, even if the Arbitrator erred in determining he had authority, his "erroneous interpretations or applications of law are not reversible." *CEEG*, 829 F.3d at 1206 (quotation marks and citation omitted).

Third, DynaResources argues the Arbitrator exceeded his powers by making findings on matters that he said were outside the scope of the arbitration agreement. The Court is unable to

find a response by Goldgroup to this contention, but nonetheless finds the record does not support DynaResources' position. Specifically, DynaResources' references show the Arbitrator determined he lacked authority to order DynaResources to hold a shareholder's meeting to unwind the issue of the new shares, and the Arbitrator's award so reflected – no such award was made. That no such award was made did not render the Arbitrator's findings in excess of his powers as his findings were used to support an award he did make: that DynaResources breached its obligations of good faith and violated Goldgroup's rights under the Option Agreement.[61]

Fourth, DynaResources asserts the Arbitrator exceeded his powers or acted contrary to law by awarding attorney's fees Goldgroup incurred for litigating in other forums: the Colorado Federal Court Lawsuit and the Mexico City Lawsuit. DynaResources argues it is axiomatic an arbitrator cannot do so and, for example, Goldgroup should have filed a counterclaim for fees in the Colorado Federal Court Lawsuit. Unfortunately, the Court does not find DynaResources' argument to be so self-evident. While DynaResources' argument may have merit had the lawsuits in which the Arbitrator awarded fees been unrelated to the matters before the arbitration, it was not so. Here, the Arbitrator awarded fees associated with the Colorado Federal Court and Mexico City Lawsuits as damages because he found DynaResources breached the agreement to arbitrate by doing so. There is ample authority that attorney fees may be recoverable as an item of damages. *See* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.").[62] Further, the Arbitrator, alternatively, awarded the fees in the

---

[61] Award, ECF No. 21-31, p. 58 at ¶ 133(e).
[62] The parties cited to U.S. law so the Court assumes that is the law which governs this issue.

exercise of his sole discretion under Art. 8.16(a)(b).[63] As Goldgroup argues, the Option Agreement allowed the Arbitrator to do so.

As for the Arbitrator's award of fees to be incurred in the future or in an unspecified amount, those are for the Mexico City Lawsuit. Goldgroup did not submit any invoices, but the Arbitrator nonetheless awarded "all amounts" Goldgroup incurs to challenge the Mexico City Order. The parties apparently agree this means all amounts already incurred and to be incurred. Thus, DynaResources' challenge is based on three alleged failures by the Arbitrator: (1) that he did not award a specific amount; (2) that he awarded fees to be incurred; and (3) that he awarded fees without any evidence to support the amount.

DynaResources cites to *Orbitcom, Inc. v. Qwest Communs. Corp.*, No. 08-cv-00181-REB-KLM, 2009 WL 3217409 (D. Colo. Oct. 1, 2009), as support that such awards must be vacated under § 10(a)(4), but *Orbitcom* is inapplicable. There, the district court declined to accept "counsel's mere say-so" as to the reasonableness of fees requested where the arbitration provision allowed for "reasonable fees." It speaks nothing of whether an arbitrator violates § 10(a)(4) when he does so, where the fees are awarded as an element of damages.[64]

Goldgroup cites to *Prate Installations, Inc. v. Chicago Regional Council of Carpenters*, 607 F.3d 467, 474 (7th Cir. 2010) and *Ludgate Ins. Co., Ltd. v. Banco De Seguros Del Estado*, No. 02 CIV. 3653 (DC), 2003 WL 443584 (S.D.N.Y. Jan. 6, 2003). *Prate* did broadly state that "an arbitrator has ample discretion to formulate remedies including an indeterminate attorney fee award of this kind," but the Seventh Circuit was addressing the issuing of whether the arbitrator had authority to award attorney's fees where the collective bargaining agreement did not

---

[63] At least as to the Colorado Federal Court Lawsuit. (Award, ECF No. 22-31 at ¶ 120.)

[64] The Arbitrator's fees award as to the Mexico City Lawsuit was not made under § 8.16(a)(b). (*See* ECF No. 21-31 at ¶¶ 122, 133(h).)

specifically discuss fees. *Ludgate* did find an arbitrator was acting within his authority when he awarded costs for future enforcement actions where the challenge was that such an award was beyond the scope of the arbitration agreement and against public policy. DynaResources' challenge here, however, appears to be the lack of any legal authority to issue such an award – a legal error. Nonetheless, while *Prate* is unpersuasive, *Ludgate*, as well as other cases, provides support that DynaResources' challenge fails.

Specifically, *Ludgate* reminds the Court that DynaResources bears the burden and, here, DynaResources provides no relevant authority to show that such an award is prohibited. Further, damages for breach of the Option Agreement were at issue in the arbitration and, as the Mexico City Court case was ongoing, an award for fees caused by that breach was within the authority of the Arbitrator. *See ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) ("[C]ourts are not to instruct the arbitrator as to the correct computation of damages.").

Finally, as to Goldgroup's contention the Arbitrator construed the AAA's statement that it would stop the arbitration if a court with jurisdiction issued an order, that is not what the Arbitrator stated. Nonetheless, under the facts and circumstances of this case, the Court finds the Arbitrator's determination to disregard the Mexico City Order was not violative of § 10(a)(4).

In summary, the recommendation to vacate under § 10(a)(4) is rejected. As to DynaResources' remaining arguments, the Court finds DynaResources failed to meet its heavy burden of showing vacatur under § 10(a)(4) should be had. *See Youngs*, 537 F.3d at 1145 (Even if the arbitrator committed serious error, "it is not the function of the courts to second-guess the arbitrator when [he] is exercising his discretion in ruling on the matters presented."); *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 939 (10th Cir. 2001) ("[C]ourts favor the arbitrator's exercise of broad discretion in fashioning remedies." (quotation marks, alterations, and citation omitted)).

### (3) Vacatur under § 10(a)(3)

Goldgroup argues the Recommendation improperly invoked § 10(a)(3), misconduct for refusing to postpone the hearing, as DynaResources was not deprived of an opportunity to be heard.[65] Instead, DynaResources chose not to participate. DynaResources responds that, to the extent the Recommendation invokes § 10(a)(3), the Recommendation is supported by the undisputed – and unchallenged – evidence of misconduct in refusing to postpone the arbitration hearing: the Mexico City Order, the AAA's statement, and the nonfinality of Judge Krieger's Order.

Pursuant to § 10(a)(3), an award may be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown." Nonetheless, "[b]ecause the primary purpose for the federal policy of favoring arbitration is to promote the expeditious resolution of disputes, a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited." *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995). The Tenth Circuit has interpreted § 10 to mean that parties are entitled to a fundamentally fair arbitration proceeding. *Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1012–13 (10th Cir. 1994). A fundamentally fair hearing requires notice, and an "opportunity to be heard and to present relevant and material evidence and argument before the decision makers." *Id.* at 1013. Courts should be reluctant to interfere with an award under § 10(a)(3) where "there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement." *Fairchild & Co. v. Richmond, F. & P. R. Co.*, 516 F. Supp. 1305, 1313–14 (D.D.C. 1981) (quoted with approval in *Aguirre*, 45 F.3d at 1464).

---

[65] In footnote 12, Goldgroup also contends an arbitrator's deviation from its own procedural orders (here, Order No. 6) does not constitute misconduct and, further, there was no violation.

The Court agrees with Goldgroup. First, the Arbitrator considered the record before him, including the three matters DynaResources relies on and found them insufficient to postpone the hearing. Thus, there existed a reasonable base for the Arbitrator's decision.[66]

Second, the Court has found the Mexico City Order is not controlling; thus, it follows the Arbitrator's refusal to postpone the hearing, even in light of the AAA's statement, is insufficient to establish misconduct. This leaves Judge Krieger's Order which, although not final, was nonetheless controlling at the time the Arbitrator decided to go forward with the hearing.

Third, and finally, DynaResources was provided notice and an opportunity to be heard; it declined to do so based on the Mexico City Order. The "bind" DynaResources found itself in – and on which it relies – was, however, of its own making. As DynaResources argued in its Motion to Vacate "Tenth Circuit precedent shows that DynaResources was required to seek that ruling [of waiver] from *this Court* rather than the arbitrator."[67] Yet, *after* it had done so, it sought a determination from *another* court – the Mexican City Court – despite the acknowledgement in the Option Agreement that arbitration is to be held in, and the forum for disputes would be in, Denver, Colorado. Moreover, DynaResources could have "forcefully objected" to the arbitration proceeding, thereby preserving its objections even if it followed through with the arbitration. *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1148-49 (10th Cir. 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995)). DynaResources cannot now be heard to complain that it did not have an opportunity to participate when it sought the order which precluded it from doing so. Thus, the Court finds vacatur may not be had under 9 U.S.C. § 10(a)(3).

---

[66] The Court finds the Arbitrator's rationale that the Mexico City Order did not apply to him personally is not reasonable. Nonetheless, that was not the Arbitrator's only rationale for his action. Considering all the reasons the Arbitrator gave, the Court cannot say the Arbitrator failed to provide a reasonable basis for his refusal to postpone.

[67] ECF No. 21, pp. 62-63 (emphasis added).

### C. DynaResources' Other Bases for Vacatur

The Recommendation did not decide the other grounds which DynaResources argued warranted vacatur. As the Court decided vacatur may not be had under § 10(a)(3) or § 10(a)(4), it examines the remaining grounds. The Court starts with § 10(a)(2) (the remaining ground argued under the domestic FAA); then the common law grounds of public policy and international comity; and then the five grounds under the Panama Convention.

#### 1. No vacatur under § 10(a)(2)

Under 9 U.S.C. § 10(a)(2), an award may be vacated "where there was evident partiality or corruption in the arbitrator[]." DynaResources provides a list of complaints which it contends shows partiality or corruption. In summary, DynaResources disagreed with the Arbitrator's: alleged interpretation ("misleading representations") of Judge Krieger's Order; finding ("falsely asserts") of forum shopping; "erroneous alleg[ation]" that DynaResources breached the Option Agreement by filing the Colorado Federal Court Lawsuit where waiver is an issue for a court; determination ("reversible error") that DynaResources breached its obligations under Article 8.16 by filing the Mexico City Lawsuit; findings to allegedly assist Goldgroup in other litigation which is outside the scope of the arbitration clause; and alleged false characterization of Goldgroup's Mazatlán Lawsuit as a request for interim measures. Goldgroup counters the Arbitrator's views of the merits of a case – or DynaResources' disagreements of the same – are insufficient to show partiality, especially in light of Judge Krieger's Order. The Court agrees.

To begin, DynaResources bears the burden but fails to provide any legal authority to support the conduct alleged is sufficient for vacatur under § 10(a)(2). For this reason alone, the request may be denied. Nonetheless, the Court has considered the relevant legal authorities and finds they do not support a finding of "evident partiality or corruption."

"[E]vident partiality…means 'evidence of bias or interest of an arbitrator that is direct, definite and capable of demonstration rather than remote, uncertain, or speculative.'" *Legacy Trading Co. v. Hoffman*, 363 F. App'x 633, 635 (10th Cir. 2010) (brackets omitted) (quoting *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982)). "[I]t is only clear evidence of impropriety which justifies the denial of summary confirmation of an arbitration award." *Ormsbee Dev. Co*, 668 F.2d at 1147 (citing *National Bulk Carriers v. Princess Management*, 597 F.2d 819 (2d Cir. 1979)). In this case, DynaResources is not asserting bias or interest such as the Arbitrator had a prior business or other relationship with Goldgroup. Instead, the sum and substance of DynaResources' arguments are that the Arbitrator's findings and decisions are erroneous, factually and legally. It is well settled, however, in no event do errors in the arbitrator's findings of fact, interpretation of the law, or application of the law justify vacating an award. *See Dish Network L.L.C.*, 900 F.3d at 1243; *Hollern v. Wachovia Securities, Inc.*, 458 F.3d 1169, 1176 (10th Cir. 2006). Therefore, DynaResources' arguments do not support vacatur under § 10(a)(3). *See Legacy Trading Co.*, 363 F. App'x at 635 (finding movant's argument that the arbitration panel's rulings were against the clear weight of the evidence did not meet the definition of evident partiality).

## 2. No Vacatur Under Common Law Grounds

DynaResources argues the Award may be vacated on judicially created grounds, i.e., the Award violates the public policy of upholding principles of international comity and respecting the authority of Mexican tribunals, and manifests a disregard of the law by the Arbitrator's refusal to abide by the Mexico City Order. Goldgroup responds[68] DynaResources fails to cite to

---

[68] Goldgroup's argument here that the grounds for vacating an arbitration award set forth in the New York and Panama Conventions are exclusive is rejected for the reasons the Court rejected its argument as against the application of the domestic FAA. In addition, Goldgroup raised the issue of whether the "manifest disregard of the law" is still a viable basis for vacatur in light of *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585

any legal authority supporting its argument of public policy and fails to show the Arbitrator demonstrated willful inattentiveness to the governing law as he applied Mexican law where applicable. The Court agrees, mainly.

First, as Goldgroup argues, DynaResources cites to no legal authority in support of its contention; therefore, it fails to meet its burden. Moreover, a review of the public policy exception shows it is inapplicable here. For, "in determining whether an arbitration award violates public policy, a court must assess *whether the specific terms contained in the contract* violate public policy by creating an explicit conflict with other laws and legal precedents, keeping in mind the admonition that an arbitration award is not to be lightly overturned." *Legacy Trading Co.*, 363 F. App'x at 636 (emphasis added, brackets omitted) (quoting *Seymour v. Blue Cross/Blue Shield*, 988 F.2d 1020, 1024 (10th Cir. 1993)). Thus, "a court's refusal to enforce an arbitrator's interpretation *of such contracts* is limited to situations *where the contract* as interpreted would violate some explicit public policy." *Lewis*, 500 F.3d at 1151 (quotations marks and citation omitted, emphasis added). But, here, DynaResources does not challenge the Option Agreement, as interpreted by the Arbitrator, as violative of any public policy. Moreover, even if the exception may apply to the Award itself, DynaResources has not shown that the Arbitrator's refusal to follow the Mexico City Order violates any public policy relating to comity. Here, the parties' Option Agreement specifically contemplated that an arbitrator in Denver, Colorado would decide the substantive claims and the procedural issues.

(2008). The Court agrees the Tenth Circuit has not decided the unsettled issue of whether any judicially created grounds for vacatur survive in wake of *Hall Street Associates*. *THI of New Mexico*, 864 F.3d at 1085 n.1; *Legacy Trading Co.*, 363 F. App'x at 635 n.2. The Court finds it need not decide the issue because, even assuming such judicially-created exceptions are still viable, DynaResources has not met its burden of showing such grounds for vacatur exist.

As for the manifest-disregard-for-the-law exception to enforcement of the Award, that requires "willful inattentiveness to the governing law." *THI of N. Mex.*, 864 F.3d at 1084 (quotation marks and citation omitted). It is not enough to show the arbitrator "'committed an error – or even a serious error.'" *Id.* at 1084-85 (quoting *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). "The record must show the arbitrator[] knew the law and explicitly disregarded it." *Id.* at 1085 (quotation marks and citation omitted). Here, DynaResources' argument is that the Arbitrator willfully disregarded Mexican law when he did not abide by the Mexico City Order to stop the arbitration proceedings. But, that presumes the Mexico City Order controls, which the Court finds DynaResources has not shown. Moreover, the Arbitrator cited to several factual findings and reasons why he found the Mexico City Order was not controlling, including Judge Krieger's Order[69] which found the arbitrator decides the issue of waiver and his own decision reaching the same conclusion. And, as discussed above, it cannot be said the Arbitrator explicitly ignored the law when the law is unsettled in this area. In sum, DynaResources' arguments fall far short of meeting its heavy burden of showing the vacatur is appropriate under the judicially created exceptions.

### 3. The Panama Convention

DynaResources asserts the Award must be vacated under Panama Convention art. 5(1)(a), 5(1)(b), 5(1)(d), 5(1)(e), and 5(2)(b). The Court addresses each in turn.

---

[69] DynaResources argues several times that Judge Krieger's Order was, essentially, irrelevant because it was interlocutory and, therefore, nonbinding. Judge Krieger's Order was interlocutory during that time, but that did not mean it did not control the parties at that time. Unless and until that order was revised (or, in this case, terminated because DynaResources voluntarily dismissed the case), *see* Fed. R. Civ. P. 54(b), that order applied to the parties as entered. That the order was "nonbinding" in terms of claim or issue preclusion or was not subject to immediate appeal did not mean that it was subject to being ignored.

### a)  art. 5(1)(a)

Under art. 5(1)(a), this Court may refuse to recognize the Award if DynaResources proves "that the agreement is not valid under the law to which the parties have submitted it," that is, that the agreement is invalid under Mexican law. DynaResources argues it is so because the Mexico City Court has determined the arbitration agreement is invalid, which determination this Court should accept as a matter of international comity. The Court disagrees. As the Court has stated, DynaResources fails to show the Mexico City Court could enter such an order. Moreover, the Mexico City Court did not find the arbitration agreement to be invalid; it found any right to arbitration was "tacitly waived" by the parties.

### b)  art. 5(1)(b)

Under art. 5(1)(b), this Court may refuse to recognize the Award if DynaResources proves "the party against which the arbitral decision has been made [DynaResources]. . . was unable, for any other reason, to present [its] defense" during the Arbitration. DynaResources contends the Mexico City Court prohibited it from participating in the merits hearing; that participating would result in violation of that court's order. The Court is not persuaded.

First, DynaResources cites to no authority to support its argument. Next, the Court has found the Mexico City Order does not control. Third, as discussed above, DynaResources sought the order on which it relies to argue it was unable to participate and cannot now be heard to complain. Finally, DynaResources fails to show why it could not or did not participate with the arbitration under protest, and seek relief from the Mexico City Court for such limited purpose. Accordingly, DynaResources has not met its burden here.

### c) art. 5(1)(d)

Under art. 5(1)(d), this Court may refuse to recognize the Award if DynaResources proves "the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, … the arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place." DynaResources' first argument is the arbitration procedure was contrary to the Option Agreement because the Mexico City Order found the arbitration clause ineffective and unenforceable. This argument is readily rejected as the Court has found the Mexico City Order does not control. Moreover, as Goldgroup argues, DynaResources fails to show that a Mexico City Court could enjoin an arbitration held in the United States, the forum where the parties agreed to arbitrate.

DynaResources' second argument appears two-fold. DynaResources' initial contention was that the arbitration procedure was contrary to United States law because, if United States law required the arbitration to proceed in accordance with the AAA's rules, the AAA's admission that it would cease upon entry of a court order (here, the Mexico City Order) is proof that the arbitration proceeding violated U.S. law. The Court rejects this contention as, even assuming DynaResources' logic is otherwise valid, DynaResources has not shown AAA's "admission" was an AAA *rule*; the Court has found the Mexico City Order does not control; and, as Goldgroup argues, Judge Krieger's Order (to which no party has contended in this case was without jurisdiction to decide) was to the contrary.

DynaResources' secondary contention is rather convoluted. Boiled down to its essence, DynaResources argued that, under U.S. law, whether an arbitration clause has been waived by litigation conduct is a question for a court which requires a six-factor test, citing to *In re Cox*

*Enterp., Inc. Set-Top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1116 (10th Cir. 2015); DynaResources filed two actions with the courts seeking a determination that Goldgroup waived the arbitration agreement; and the Arbitrator refused to defer to "a court's" determination that Goldgroup waived the arbitration agreement. DynaResources' contention is erroneous.

First, the Court has determined the Mexico City Order does not control. Next, aside from this fact, the Mexico City Court did not apply the six-factor test under U.S. law. DynaResources cannot have it both ways – it cannot argue that *U.S. law* applies to waiver, but then argue the Arbitrator violated U.S. law when he refused to follow the Mexico Court Order which decided waiver under *Mexican law*. Moreover, DynaResources' argument is disingenuous. It sought a determination from two courts – one of whom found (contrary to DynaResources' contention) that waiver was an issue for an arbitrator. That I (this Court) find the question is one for a court nonetheless does not save the day for DynaResources. Under DynaResources' argument, waiver is to be determined under the six-factors – something the Mexico City Court did not do, even if it could do so. Thus, DynaResources fails to meet its burden for vacatur under art. 5(1)(d).[70]

### d) art. 5(1)(e)

Under art. 5(1)(e), this Court may refuse to recognize the Award if DynaResources proves "the decision…has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made." DynaResources asserts the Mexico City Court "suspended the arbitration proceeding and *ipso facto* determined that any award made in the arbitration—which was conducted in violation of the Mexico City Federal Court Order—must be set aside under Mexican law." Goldgroup responds the Mexico City

---

[70] The Court assumes, without deciding, DynaResources' arguments fall within the scope of art. 5(1)(d). After all, the second basis requires the "absence of such agreement."

Order could not annul or suspend an Award which had not yet issued;[71] that the Mexico City Court did not have jurisdiction to set aside or suspend the Award; and that 5(1)(e) refers to procedural law, not substance law. The Court generally agrees.

First, DynaResources' argument is, in effect, that the Mexico City Order nullified the Award, but the Court finds no one has shown that "effective" nullification or preemption is within the coverage of art. 5(1)(e). The Court is mindful that the article V defenses are strictly applied and generally viewed narrowly. *Ario*, 618 F.3d at 291 (citation omitted). Next, the Court has found that, assuming effective nullification is within the scope of art. 5(1)(e), effective nullification by the Mexico City Court is not permitted under art. 5(1)(e) and, further, the Mexico City Order does not control. Finally, the Court agrees that art. 5(1)(e) refers to procedural law, otherwise the rationale under *Ario* (upon which DynaResources relies in arguing the domestic FAA and common law exceptions apply) would falter. *See Yusuf*, 126 F.3d at 20-23. Accordingly, the Court finds DynaResources has not shown the grounds for vacatur under art. 5(1)(e) are met.

### e) *art. 5(2)(b)*

Under art. 5(2)(b), this Court may refuse to recognize the Award if DynaResources proves "the recognition or execution of the decision would be contrary to the public policy…of that State," i.e., the United States. Here, DynaResources argued recognizing the Award would violate the public policy that requires deference to another nation's interpretation of its own laws. Thus, according to DynaResources, when the Arbitrator ruled that, under Mexican law, the Option Agreement is valid and enforceable, he violated international principles of comity.

---

[71] The Court recognizes Goldgroup's argument here appears to be inconsistent with its earlier argument regarding the effect of the Mexico City Order. But, the Court notes the parties' arguments appear, in more than one instance, inconsistent with other arguments raised in other papers or on other issues.

Goldgroup argues the exception is very narrow and the Mexico City Order was not entitled to deference and comity is not a basis to vacate the Award. The Court agrees, mainly.

To start, the Court has found the Mexico City Order does not control; for that reason alone, DynaResources' argument is rejected. Moreover, as stated, the Mexico City Court did not find the Option Agreement was invalid. DynaResources' citation to ¶ 91 of the Arbitrator's Award shows the Arbitrator found the Option Agreement valid and enforceable. Where the Mexico City Court and the Arbitrator diverged was on the issue of waiver – the Mexico City Court found waiver under Mexican law (and, therefore, the arbitration agreement was not unenforceable) while the Arbitrator did not, under either law.[72, 73] But, as the Supreme Court has stated, albeit in a different context, "[t]he utility of the Convention in promoting the process of international commercial arbitration depends upon the willingness of national courts to let go of matters they normally would think of as their own." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 639 n.21 (1985). And, here, the parties bargained for the arbitration to be heard in Denver, Colorado, by an arbitrator applying foreign (Mexico law) as he determined appropriate. Contrary to such bargain, DynaResources' requests would require the forum arbitrator to defer to the decision/analysis of the foreign forum. "[W]e are, [however,] well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Id.* at 626-27. Thus, having provided no law showing to the contrary, the Court finds

---

[72] ECF No. 21-31, pp. 40-41. And, although not raised by the parties, the Court notes the Mexico City Court examined *all parties'* conduct and found waiver based on such conduct, while the Arbitrator examined whether Goldgroup's actions were sufficient to support waiver.

[73] DynaResources' argument here is not that the Arbitrator did not have authority but, rather, that he should have deferred to the Mexico City Court as he got it wrong.

that recognizing the Award would not be contrary to the United States' public policy as DynaResources claimed.

## III. CONCLUSION

Based on the foregoing it is **ORDERED**

(1) That Applicant Goldgroup Resources, Inc.'s Objections to Magistrate Judge Recommendation (ECF No. 54) is OVERRULED IN PART and SUSTAINED IN PART;

(2) That the Recommendation of United States Magistrate Judge (ECF No. 49) is REJECTED;

(3) That Applicant Goldgroup Resources, Inc.'s Application to Confirm Arbitration Award (ECF No. 2) is GRANTED;

(4) That DynaResource de Mexico, S.A. de C.V.'s and DynaResource, Inc.'s Petition for Nonrecognition of Foreign Arbitral Award and/or Motion to Vacate Arbitration Award (ECF No. 21) is DENIED;

(5) That the Clerk shall enter judgment in favor of Applicant and against Respondents as stated herein; and

(6) That the Clerk shall thereafter close this case.

DATED this 9th day of May, 2019.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge