**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 16-cv-02547-RM-KMT

GOLDGROUP RESOURCES, INC.,

    Applicant,

v.

DYNARESOURCE DE MEXICO, S.A. DE C.V., and
DYNARESOURCE, INC.,

    Respondents.

---

## ORDER
---

This matter is before the Court on Respondents DynaResource De Mexico, S.A. De C.V. ("DynaMexico") and DynaResource, Inc.'s ("DynaUSA")[1] Motion for Stay of Judgment Pending Appeal and to Waive and Reduce Supersedeas Bond ("Motion on Bond") (ECF No. 85) and Respondents' Motion to Strike the Declaration of Keith Piggott ("Motion to Strike") (ECF No. 94) (collectively, "Motions") which are now fully briefed. Upon consideration of the Motions, relevant parts of the court record, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

**I.    BACKGROUND**

The parties are well versed with the background which precedes this Order so it will only be summarized here. Briefly, the Court granted judgment in favor of Applicant Goldgroup Resources, Inc. and confirmed an arbitration award. Thereafter, it denied DynaResources' Fed. R. Civ. P. 59(e) motion. DynaResources' motion filed under Fed. R. Civ. P. 60(b) is pending,

---
[1] DynaMexico and DynaUSA collectively referred to in this Order as "DynaResources."

but it is not fully briefed. The Court finds the Rule 60(b) motion does not affect its analysis or decision here.

II.     **DISCUSSION**

    **A. Motion to Strike**

DynaResources moves to strike the Declaration of Mr. Piggott arguing his testimony lacks sufficient foundation and "improperly attempts to inject an exorbitant award of attorney's fees into the Court's bond analysis." (ECF No. 94, p. 2.) While the Motion to Strike is not a motion for summary judgment, as Goldgroup argues, the Court nonetheless retains the authority to determine what may properly be considered in its bond analysis. *See Fidelity National Title Ins. Co. v. Pitkin County Title, Inc.*, No. 12-cv-03077-RM-KLM, 2018 WL 10245934, at *2 n.3 (D. Colo. Sept. 10, 2018) (discounting conclusory affidavit in support of reduced bond request).

Under Fed. R. Evid. 602 "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." "Under the personal knowledge standard, an affidavit is inadmissible if 'the witness could not have actually perceived or observed that which he testifies to.'" *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)). However, Goldgroup argues that Mr. Piggott is the CEO, and the Tenth Circuit has recognized that "an inference of personal knowledge" may be found where it is "based not only on the corporate officers' respective positions, but also on the nature of their participation in the contested matters." *Pack v. Hickey*, 776 F. App'x 549, 555 (10th Cir. 2019) (citations omitted); *see also Pipkin v. Mortgage Creditcorp, Inc.*, No. 94-6443, 1995 WL 747437, at *4, 72 F.3d 138 (10th Cir. Dec. 18, 1995) (Table Decision) (same).

Here, DynaResources requests the Court to strike paragraphs 13-18 of the Declaration in their entirety. Upon review, the Court finds that striking some – but not all – of what has been requested is appropriate.

**1. The Challenged Paragraphs**

*Injunctive relief.* First, the Court agrees that no injunctive relief was requested or awarded; therefore, all references to such relief are stricken.

*Paragraph 13.* As there was only an objection to injunctive relief, the remainder of paragraph 13 remains.

*Paragraph 14*. While the reference to "injunctive relief" will be stricken, the remainder of paragraph 14 will not. The paragraph accurately reflects what was awarded. And, it may certainly be reasonably inferred that Mr. Piggott, as Goldgroup Mining's CEO and the one who negotiated the Option agreement, would have personal knowledge to offer an opinion that having two directors on DynaMexico's board of directors would be critical to its ability to have equal influence on that board.

*Paragraph 15.* The Court agrees that Mr. Piggott fails to show he has sufficient personal involvement that would support personal knowledge, by inference or otherwise, concerning the operations of DynaMexico. This is so especially in light of DynaResources' counter Declaration by Koy Diepholz, president of DynaMexico, of Goldgroup and Mr. Piggott's lack of participation in or internal information about DynaMexico.

*Paragraph 16.* DynaResources argues Mr. Piggotts' statements about alleged improper authorizations of expenditures causing irreparable harm are nothing more than speculative belief and opinion. But, the Arbitrator found unauthorized expenditures have been made contrary to the Option Agreement, lending support for Mr. Piggotts' opinions. (ECF No. 21-31, pp. 45, 46,

57.[2]) Thus, while the reference to injunctive relief will be stricken, the remainder of the paragraph will not.

***Paragraph 17.*** DynaResources also contends this paragraph is speculative as to what Mr. Piggott contends will occur if declaratory and injunctive relief are stayed but the Court does not find it is so. After all, for example, DynaResources has taken the position that it should be afforded an "offset" (addressed below) of what Goldgroup allegedly owes to DynaResources such that no payment would be made to Goldgroup.

***Paragraph 18.*** DynaResources contends this paragraph contains incorrect and improper legal conclusions and factual statements (e.g., the alleged ongoing dissipation of DynaMexico's funds and business viability) for which Mr. Piggott fails to show he has personal knowledge. The Court agrees as to the factual statements for the same reason stated above as to paragraph 15. However, the Court finds otherwise as to the alleged legal conclusions as they are factual statements, e.g., the inability to appoint board members would preclude Goldgroup from having control over the direction of DynaMexico's Management Committee, and Mr. Piggotts' opinions. Thus, the "legal conclusions" will not be stricken.

In summary, as a then long-term employee and high-ranking officer of Goldgroup Mining who participated in the negotiation of the Option Agreement, it is logical that Mr. Piggott would have such knowledge about the agreement, the effect of the Award, and, for the most part, its potential effect on Goldgroup should a stay be granted. Mr. Piggott has provided more than a generalized, unsupported conclusory set of statements concerning such matters. Mr. Piggott's proffered testimony as to the state of affairs for DynaMexico, however, for the most part, went

---

[2] Bates 702, 703, and 714.

beyond his own personal knowledge as CEO. Accordingly, the Motion to Strike as to the challenged paragraphs is granted to the extent stated above.

**2. The Attorney's Fees.**

DynaResources' final challenge is to Mr. Piggott's statement of the attorney's fees incurred in connection with the Mexico City Litigation/Mexico City Lawsuit. He states that approximately $600,000 has been incurred through June 2019 and anticipates the total amount will exceed $725,000 because, at the time of the Declaration, those proceedings were ongoing. DynaResources contends these amounts should not be considered in evaluating the bond issue because they are no longer recoverable. According to DynaResources, this is because a motion requesting such fees was not filed "no later than 14 days after the entry of judgment" as required under Fed. R. Civ. P. 54(d)(2). Goldgroup counters that it has already been awarded fees by the Arbitrator in the Award and Mr. Piggott's statement provides context as to the appropriate bond amount. The Court agrees.

Rule 54(d)(2)(B)(i) deals with the timing of a post-judgment request for attorney's fees as DynaResources' case citations show, e.g., *Slawson Exploration Co., Inc. v. U.S. Energy Dev. Corp.*, No. 17-cv-01248-PAB-KMT, 2018 WL 3079708, at *4 (D. Colo. June 20, 2018) (petitioner's request for fees denied without prejudice for failure to comply with Rule 54, but no award of fees was made by arbitrator). Here, the Arbitrator has already awarded attorney's fees to Goldgroup, including a specific amount as to the Colorado Federal Lawsuit. (ECF No. 21-31, ¶¶ 120, 122.) Moreover, although not argued by the parties, the Court notes that, to the extent Rule 54 applies, Rule 54(d)(2)(C) provides that "issues of liability for fees" may be decided first

(and, here, has been decided by the Arbitrator) "before receiving submissions on the value of services."[3]

And, as to DynaResources' objections of the specific amount, the Court agrees there has been no determination of that amount. The amount could not have been determined at the time of the Award as the Mexico City Lawsuit was still pending and, indeed, was still pending until recently. (ECF No. 109-1.) This does not mean, however, the Court cannot take judicial notice of the record and the number of years the parties have been in litigation, or consider at least the amount incurred while recognizing that the reasonableness of such fees have not been determined. Accordingly, the Mr. Piggotts' Declaration concerning attorney's fees will not be stricken.

**B. Waiver of Bond**

Rule 62(b) of the Federal Rules of Civil Procedure provides that a "party may obtain a stay by providing a bond" and such stay "takes effect when the court approves the bond." The purpose of such a bond "is to secure an appellee from loss resulting from the stay of execution." *Miami Intern. Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986). In setting a bond, "'courts seek to protect judgment creditors as fully as possible without irreparably injuring judgment debtors.'" *Paynter*, 807 F.2d at 873 (quoting *Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1154, 1155 (2d Cir.1986)). District courts have inherent discretionary authority in setting the amount of the supersedeas bonds. *Paynter*, 807 F.2d at 873; *Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir. 2006). But, in normal circumstances, a full bond should be required. *Paynter*, 807 F.2d at 873; *Laubach*, 443 F.3d at 1299.

---

[3] The Court notes the Award as to the Mexico City Lawsuit was based on the "harm" caused to Goldgroup while the Award as to the Colorado Federal Court Lawsuit was based on Goldgroup being the prevailing party. (ECF No. 21-31, ¶¶ 120, 133(h).)

In determining whether to waive the bond requirement, district courts may consider several factors including: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment…; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money…; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position." *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988) (citations and quotation marks omitted) (hereafter "*Dillon* factors"). *See also, e.g., Fidelity National Title Ins. Co.*, 2018 WL 10245934, at *1 (same); *Compañía De Inversiones Mercantiles S.A. v. Grupo Cementos De Chihuahua, S.A.B. DE C.V.*, No. 15-cv-02120-JLK, 2019 WL 8223560, at *2 (D. Colo. May 21, 2019) (same). The burden, however, is on the appellant "to demonstrate objectively that posting a full bond is impossible or impractical; likewise, it is the appellant's duty to propose a plan that will provide adequate (or as adequate as possible) security for the appellee." *United States v. Kurtz*, 528 F. Supp. 1113, 1115 (E.D. Pa. 1981) (cited with approval in *Paynter*, 807 F.2d at 873-4). *See also Vreeland v. Schwartz,* No. 13-cv-03515-PAB-KMT, 2019 WL 5623307, at *1 (D. Colo. Oct. 31. 2019) (same).

DynaResources seeks an order staying enforcement of the Final Judgment through the completion of post-judgment proceedings in this case, including any appeal to the United States Court of Appeals for the Tenth Circuit and, "if necessary," to the United States Supreme Court. Relying mainly on the *Dillon* factors, DynaResources requests the Court to deviate from the general rule which requires an appellant to post a supersedeas bond in the full amount of the

judgment and order that no bond should be required.[4] In addition, DynaResources contends the stay should also apply to the nonmonetary relief ordered in the Award. Goldgroup argues otherwise.

To begin, the economic climate today is vastly different from the time when the Motion on Bond was filed. Viewed under either economic lens, the Court finds DynaResources' showing is insufficient.

1. **The Monetary Relief under the Final Judgment**

The Arbitrator awarded certain monetary relief to Goldgroup. Although DynaResources considers the monetary award of $85,613.00 related to the arbitration fees and costs as "other relief," the Court also considers this award here.

***Ability to Pay, Financial Strength, and "Waste of Money."*** First, relying on its alleged "entitlement" to set-off what Goldgroup owes to DynaMexico[5] under the competing Mexico City Order and DynaUSA's financial strength, DynaResources contends it has the ability to and will pay the Final Judgment if it does not prevail on appeal. The Court is not persuaded by the set-off argument and DynaResources cites to no controlling law that it is entitled to a set-off. Moreover, if DynaUSA is so financially sound, it would not irreparably harm DynaResources to post the full bond amount. Of course, DynaResources' argument that filing a supersedeas bond would financially impair its gold mining operations in Mexico cuts the other way – that DynaResources would not have the ability to pay – but nonetheless supports the conclusion that a bond is required. And, in light of today's economic environment, it is far from clear that DynaResources

---

[4] DynaResources also asserts any bond should be reduced to zero; the equivalent of no bond.
[5] DynaMexico advises it has begun collections on such amount.

8

has the same financial strength today[6] or that such assets will still be available following the outcome of their appeal.

*The Collection Process.* Relying on its set-off argument again and that collection may be had by garnishing bank accounts "or through other means provided by law,"[7] DynaResources contends collection will not be an issue. But, as Goldgroup argues, if bond is posted it would render the collection process – which may invite further post-appeal litigation – unnecessary against DynaMexico, a Mexican corporation, and DynaUSA, a Delaware corporation located in Texas.

*Delays in Obtaining any Judgment after Affirmed on Appeal.* DynaResources' arguments here merely repeat its other arguments, i.e., set-off, multiple avenues for collecting the Final Judgment, and availability of assets that can be reached. They are rejected here for the same reasons stated above.

*Other Considerations.* DynaResources also raises a number of other arguments, none of which persuades the Court to depart from the general rule that "the amount of the bond matches the full amount of the judgment." *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1559 (10th Cir. 1996). Specifically, DynaResources' diligence in seeking a stay is unpersuasive; after all, the 30-day automatic stay lasts only 30 days. Fed. R. Civ. P. 62(a). Next, DynaResources offers to forgo seeking recovery under the Mexico City Order which is at issue. This is analogous to the set-off which the Court has already found insufficient. Finally, DynaResources asserts the supersedeas bond would impair its gold mining operations in Mexico. As the Court addressed

---

[6] Actually, in view of today's market worldwide, it can reasonably be inferred that DynaResources does not. *See Farm Bureau Life Ins. Co. v. American Nat'l Ins. Co.*, No. 2:03-cv-646(TC), 2009 WL 961171, at *3 (D. Utah April 8, 2009) ("Considering the current economic climate, no company's financial stability is beyond question.").
[7] ECF No. 85, p. 7.

above, this argument supports rather than negates the need to post a bond, especially in light of the current economic climate.

   2.  **The Remaining Relief under the Final Judgment**

DynaResources contends the other relief awarded should also be stayed for a myriad of reasons, none of which the Court finds persuasive. First, the Court finds DynaResources has not made a strong showing of likelihood of success on the merits and, further, its motion to alter or amend the judgment has been denied. For the same reasons, DynaResources' cursory argument based on international comity and public policy is rejected.

Next, based on actions taken by DynaMexico under the Mexico City Order, Goldgroup is apparently currently no longer a shareholder – but Section 7.3 of the Option Agreement upon which the Award was based was not contingent on Goldgroup being a shareholder.[8] (ECF No. 21-31, p. 56 (Bates 713).) Accordingly, as Goldgroup argues, this fact does not diminish its right to declaratory relief.

Third, even if DynaMexico owes DynaUSA more than $4 million for some undisclosed, and apparently unrelated matter, that does not negate the Award that DynaUSA return $1,044,952.46 to DynaMexico.

Finally, the Court is not convinced by DynaResources' contention that some of the specific performance required under the Award is impossible to perform without an order from a Mexico judge. DynaResources' bare citations to the Corporation Act of Mexico is insufficient. Further, the Court notes the Option Agreement contemplates that DynaUSA – whom the Award ordered to act – can act to effectuate the appointment of directors. *See* ECF No. 21-3, at 7.3 ("DynaUSA *shall cause* DynaMexico's board of directors to consist of three directors" but once

---

[8] DynaResources argues Goldgroup will not be irreparably harm by a stay because it is no longer a shareholder.

"Goldgroup timely completes Phase 4 of the Option,…the size of the board of directors shall be increased to five and DynaUSA and Goldgroup shall each appoint two directors and agree on a fifth member to be appointed." (emphasis added)). Accordingly, DynaResources fails to show a stay should enter as to the remaining relief.[9]

### 3. The Bond

In summary, the Court finds DynaResources has not met its burden of demonstrating objectively that posting a full supersedeas bond is impossible or impractical, or that its proposals will provide adequate security for Goldgroup. Upon review of the Award, the Court finds that a full supersedeas bond in this case would be for $1,106,929.60. This amount is comprised of the following amounts:

(1) $403,913.92 in attorney's fees and costs;

(2) $85,613.00 in arbitration related fees and expenses;

(3) $17,402.68[10] in post-judgment interest[11] on the $489,526.92 ((1) + (2)); and

(4) $600,000 in attorney's fees and costs related to the Mexico City Lawsuit.

---

[9] DynaResources' Motion on Bond cites to no legal authority in support of its stay request but tracks the factors governing a stay of injunctive relief – except for omitting the showing of irreparable harm as to the movant. Goldgroup relies on *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) which sets forth the following factors a movant must demonstrate to obtain a stay of injunctive relief pending appeal: "whether the stay applicant has made a strong showing that he is likely to succeed on the merits; whether the applicant will be irreparably injured absent a stay; whether issuance of the stay will substantially injure the other parties interested in the proceeding; and where the public interest lies." *See also Sierra Club v. El Paso Gold Mines, Inc.*, No. CIV.A.01 PC 2163 OES, 2003 WL 25265871, at *1 (D. Colo. Apr. 21, 2003) (same). As stated above, the Court is not persuaded by DynaResources' arguments. Moreover, under *Hilton*, which the Court finds persuasive, while DynaResources addresses irreparable harm it was only as to Goldgroup, not to itself – the movant.

[10] Goldgroup calculates this amount as $17,715.13 (ECF No. 92, p. 11 n.5), but the Court's calculation reflects it is $17,402.68.

[11] DynaResources' Reply argues the Court should not award post-judgment interest as the Arbitrator did not award post-judgment interest. On this bare record, the Court is not persuaded that post-judgment interest should not be included, as supported by DynaResources' cited case of *Slawson Exploration Co.*, 2018 WL 3079708, at *4 ("once an arbitration award is confirmed in federal court, post-judgment interest is mandatory and 'the rate specified in [28 U.S.C.] § 1961 applies.'" (brackets in original, citation omitted)).

The first two amounts are not in dispute. As to the fourth amount for attorney's fees[12] of $600,000,[13] the Court is not determining their accuracy as "they were calculated solely for the purpose of assessing an approximate sum that represents the full amount…of the assessed judgment for a supersedeas bond sufficient to justify a stay on appeal of this matter." *U.S. ex rel. Sun Const. Co. v. Torix Gen. Contractors, LLC*, No. 07-CV-01355-LTB-MJW, 2011 WL 2182897, at *3 (D. Colo. June 6, 2011).

### III. CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That the Motion to Strike (ECF No. 94) is GRANTED IN PART and DENIED IN PART as stated herein;

(2) That the Motion for Stay of Judgment Pending Appeal and to Waive and Reduce Supersedeas Bond (ECF No. 85) is DENIED; and

(3) That Respondents, within 21 days of the date of this order, must post a supersedeas bond in the amount of $1,106,929.60 in order to be granted a stay pursuant to Fed. R. Civ. P. 62(b).

DATED this 25th day of March, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

[12] DynaResources' arguments concerning the Mexico City Lawsuit fees are rejected here for the same reasons the Court rejected the request to strike Mr. Piggott's statement concerning such fees.

[13] The Court did not consider the additional estimated $125,000 in fees due to the limited work shown in the record related to that Mexico City Lawsuit after the Declaration was filed.