**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 16-cv-02547-RM-KMT

GOLDGROUP RESOURCES, INC.,

      Applicant,

v.

DYNARESOURCE DE MEXICO, S.A. DE C.V., and
DYNARESOURCE, INC.,

      Respondents.

---

## ORDER

---

The parties have been litigating for many years in many forums concerning an agreement involving a gold mining operation (the "SJG Property") in Mexico. The Tenth Circuit Court of Appeals recently affirmed this Court's Order confirming an Arbitration Award in favor of Plaintiff Goldgroup Resources, Inc. ("Goldgroup"). Since the mandate was issued, motions have been filed and withdrawn. The Court issued orders addressing those that remained. The Court believed the disputes were settled but the motions now pending show that is not so. Instead, disputes remain between the parties over the judgment which has been affirmed.

The Arbitration Award awarded monetary and non-monetary relief. There is no dispute that Defendants DynaResource de Mexico, S.A. de C.V. ("DynaMexico") and DynaResource, Inc. ("DynaUSA") (DynaMexico and DynaUSA, collectively, "DynaResources") have now satisfied the monetary relief awarded. The disputes at hand are 1) whether DynaResources has satisfied the non-monetary relief awarded, and 2) if not, whether the Court should relieve DynaResources of its obligation to do so or hold DynaResources in contempt because it has not

done so. After reviewing the relevant parts of the record, the Court concludes that (1) DynaResources' third Motion for Relief under Rule 60 should be denied; and (2) that Goldgroup's Motion for Contempt should be granted in part and denied in part.

## I.    BACKGROUND

The Court assumes the reader's familiarity with the extensive background which precedes this Order[1]; therefore, only those matters which are essential will be included here.

The parties have litigated their disputes in several lawsuits. Three are relevant here: this lawsuit; a lawsuit brought by DynaResources against Goldgroup in Mexico City, Mexico (the "Mexico City Lawsuit")[2]; and a lawsuit brought by DynaResources against Goldgroup in Dallas, Texas (the "Dallas Recognition Case").[3] The Court starts with the Mexico City Lawsuit.

***The Mexico City Lawsuit.*** The Mexico City Lawsuit was filed before the lawsuit in this Court was filed. As relevant here, on October 5, 2015, the Mexico City Court entered an Order (the "Mexico City Order" or "Mexico Judgment") addressing two agreements: (1) an Earn In/Option Agreement ("Agreement") dated September 1, 2006; and (2) a Memorandum of Understanding ("MOU") dated July 29, 2008.[4] As for the Agreement, the Mexico City Court found an arbitration provision contained in the Agreement was unenforceable based on waiver and, accordingly, that an arbitration initiated by Goldgroup in Denver, Colorado could not proceed as it was without jurisdiction. As for the MOU, the Mexico City Court found that Goldgroup breached the MOU by claiming it was the direct owner of 50% of the SJG mining

---

[1] A summary of the extensive background may be found in this Court's order in *Goldgroup Resources, Inc. v. DynaResource De Mexico, S.A. De C.V.*, 381 F. Supp. 3d 1332 (D. Colo. 2019) and in the Tenth Circuit's opinion affirming that order in 994 F.3d 1181 (10th Cir. 2021).

[2] This is the same Mexico City Lawsuit discussed in the Court's Order of May 9, 2019.

[3] This is not the same lawsuit as the Texas Lawsuit discussed in the May 9, 2019 Order.

[4] The Arbitrator apparently recognized the Mexico City Lawsuit involved two different matters. (ECF No. 2-2, p. 20 at ¶ 53 (Stating that DynaResources sued Goldgroup for damages for defamation and then, "[a]t some point in those proceedings," "also asked the Mexican court to declare that the claims in the arbitration were not arbitrable.")).

 Unless stated otherwise, the page references are to the page numbers assigned to the document by the court's CM/ECF system, found at the upper right-hand corner of the document.

project when it was not. As damages caused by the breach of the MOU, the Mexico City Court awarded DynaResources more than $48 million.[5] Goldgroup challenged the Mexico City Order through various avenues but ultimately lost.[6] In execution of its Mexico Judgment, DynaResources foreclosed on a lien on Goldgroup's shares in DynaMexico. As of February 2020, under Mexican law, Goldgroup was no longer a shareholder of DynaMexico.

***This Lawsuit.*** This lawsuit involved competing requests to vacate or confirm the Arbitration Award issued on August 24, 2016 under the Agreement. The Arbitrator found the Mexico City Order did not preclude him from going forward with the Arbitration.

DynaResources' challenges to the award relied on, among other things, the Mexico City Order's determination regarding the enforceability of the arbitration provision.[7] On May 9, 2019, this Court confirmed the Arbitration Award, finding that the Mexico City Order did not control. Accordingly, Final Judgment was entered which confirmed the monetary and non-monetary relief awarded.[8] The non-monetary relief consists of at least the following:

1) That Goldgroup is entitled to appoint two directors to the Board of Directors of DynaMexico;

2) That the Board of Directors of DynaMexico shall consist of five total members[9];

3) That Goldgroup and DynaUSA shall hold a meeting of the shareholders of DynaMexico to appoint the fifth board member and both shall act in good faith with respect to this appointment;

4) That the parties shall exchange, in writing, the names of potential candidates for the fifth director;

---

[5] ECF Nos. 21-20, 21-21.
[6] *See* ECF Nos. 102, 149.
[7] DynaResources had argued the arbitration provision was found invalid or void; this Court disagreed.
[8] ECF Nos. 75, 76.
[9] The Court questions whether (1) and (2) were awarded under the Arbitration Award. Because DynaResources concedes (ECF No. 167, p. 2) these are required under the Arbitration Award, the Court assumes they were awarded.

5) That DynaResources must account to Goldgroup, in writing and with particularity and in detail, for any and all Expenditures[10] that DynaMexico has incurred since June 2011; and

6) That any Expenditures that have been incurred since June 2011 that were not included in a budget approved by the Management Committee were improper, and must be refunded to DynaMexico. This included, without limitation, the amount of $1,044,952.46 specified in the Arbitration Award.

(Collectively, the "Six Arbitration Orders.") (ECF No. 21-31, pp. 56-58 (Bates 713-715).[11]

The Court also addresses whether the Arbitration Award likewise ordered the following, as these matters are apparently in dispute (1) that the Management Committee of DynaMexico continues to exist and shall continue to exist unless and until the parties agree otherwise in writing and (2) that Goldgroup shall hold two of the three seats of the Management Committee.[12]

After Final Judgment was entered, DynaResources filed several post-judgment motions. This included a Motion to Alter or Amend the Judgment under Fed. R. Civ. P. 59(e) ("Motion to Amend"); Motion for Stay of Judgment Pending Appeal and to Waive or Reduce Supersedeas Bond ("Motion for Stay"); three Motions for Leave to Supplement the Record; and a Motion for Relief from Judgment under Fed. R. Civ. P. 60(b) (the "Motion for Relief").[13] The Motion for Relief would be DynaResources' first of three motions seeking relief under Rule 60(b).

The Court granted DynaResources' requests to supplement but denied the Motion to Amend and denied in part the Motion for Stay.[14] Before the Motion for Relief was fully briefed, DynaResources filed its notice of appeal. DynaResources filed a second motion to stay, which the Court granted in part and denied in part.[15] A stay was granted as to the monetary award upon

---

[10] "Expenditures" is defined under Article 1.4 of the Agreement. (ECF No. 21-31, p. 30 (Bates 687).)

[11] As to the first four matters, the Arbitration Award relies on Section 7.3 of the Agreement.

[12] *See* ECF No. 165, pp. 3-4 (Goldgroup listing what it contends the Arbitration Award ordered); ECF No. 167, pp. 2-3 (DynaResources setting forth what it contends the Arbitration Award ordered).

[13] ECF Nos. 83, 85, 96, 102, 107, 112.

[14] ECF Nos. 116, 117.

[15] ECF Nos. 129, 140.

the posting of a supersedeas bond but was denied as to the non-monetary award. The Court did not rule on the Motion for Relief during the pendency of the parties' appeal to the Tenth Circuit.

On April 16, 2021, the Tenth Circuit affirmed the Court's Order confirming the Arbitration Award. *Goldgroup Resources, Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181 (10th Cir. 2021). The mandate was issued on May 10, 2021. More motions followed, including a second Rule 60(b) motion by DynaResources.[16]

Goldgroup filed a motion to release the funds ("Motion to Release Funds") which were subject to the appeal bond.[17] DynaResources filed a response (the "Response") on May 17, 2021.[18] As to the monetary relief, DynaResources stated it did not object to the bond being released and recognized it owed post-judgment interest. As to the non-monetary relief, DynaResources represented:

> [DynaResources has] ***fully complied*** with the non-monetary dictates of the Judgment and Final Arbitration Award in an Extraordinary Shareholders' Meeting held in Mazatlan, Mexico (as required by Mexican law) on August 24, 2020.

(Italics and bold added.[19]) The Court granted Goldgroup's Motion to Release Funds and ordered the funds released.[20]

DynaResources moved to withdraw its motions which were filed post-mandate, including the second Rule 60(b) motion, which the Court granted on May 19, 2021.[21] In doing so, the Court stated:

> in light of the status of this case and the Tenth Circuit's mandate, on or before Friday, **May 28, 2021, Respondents** [DynaResources] shall file a status report as to whether they wish to withdraw their [first] Motion for Relief from Judgment (ECF No. 112).

---

[16] ECF No. 149.
[17] ECF No. 159.
[18] ECF No. 157.
[19] ECF No. 157, p. 3 at ¶ 9.
[20] ECF No. 159.
[21] ECF No. 158.

(Bold in original.[22]) In response to the May 19, 2021 Order, DynaResources moved to withdraw the Motion for Relief (the first Rule 60(b) Motion) on May 24, 2021. DynaResources' request to withdraw relied on its Response and stated it "does not intend to prosecute the Motion for Relief, and withdrawal of the Motion for Relief will result in the resolution or closure of outstanding matters in this proceeding."[23] In reliance on the court record, including DynaResources' representations, the Court granted the motion to withdraw the Motion for Relief.[24]

Less than three weeks later Goldgroup filed its Motion for Contempt Citations ("Motion for Contempt") now before the Court.[25] Goldgroup asserts DynaResources refuses to effectuate the non-monetary relief and seeks an order finding DynaResources in civil contempt, directing DynaResources to immediately effectuate the non-monetary relief, and imposing sanctions of an award of attorney fees and costs. In support of its Motion for Contempt, Goldgroup provides two letters it wrote to DynaResources: a May 17, 2019 letter seeking to enforce the Arbitration Award after this Court's May 9, 2019 Order confirming that award; and a May 14, 2021 letter seeking to enforce the Arbitration Award after the mandate was issued by the Tenth Circuit.

DynaResources' response to the Motion for Contempt is, effectively, two-fold. First, DynaResources filed a third Rule 60(b) motion arguing that it should be relieved from complying with certain portions of the non-monetary relief.[26] Second, DynaResources filed a response arguing that it has fully complied with the non-monetary relief.[27] Those two motions – the Motion for Contempt and the third Rule 60(b) Motion – are at issue here.

***The Dallas Recognition Case.*** In 2020, DynaResources filed the Dallas Recognition Case seeking recognition of the Mexico Judgment as an American judgment. On May 12, 2021,

---

[22] ECF No. 158, p. 2.
[23] ECF No. 163, p. 2 at ¶ 7.
[24] ECF Nos. 163, 164.
[25] ECF No. 165.
[26] ECF No. 166.
[27] ECF No. 167.

the Dallas Court found the Mexico Judgment which granted DynaMexico money "is final, conclusive, and enforceable according to the law of Mexico."[28] Nonetheless, citing several reasons,[29] the Dallas Court refused to recognize the Mexico Judgment as an American judgment. According to DynaResources, which Goldgroup does not dispute, the Dallas Court's order is on appeal.[30]

## II.   DISCUSSION

### A. DynaResources' Third Rule 60(b) Motion

#### 1. Legal Standard

DynaResources relies on Rule 60(b)(5) and (b)(6) for relief in its third Rule 60(b) motion. Rule 60(b)(5) of the Federal Rules of Civil Procedure provides the Court may relieve a party from a final judgment if "applying it prospectively is no longer equitable." Rule 60(b)(6) provides the Court may relieve a party from a final judgment for "any other reason that justifies relief."

Rule 60(b)(5) "is based on the historic power of a court of equity to modify its decree in the light of changed circumstances." 11 Mary Kay Kane, Federal Practice and Procedure § 2863 (3d ed. April 2021 update) (hereafter "Kane"). The Rule applies to any judgment that has prospective effect. *Id.*; *United States v. Melot*, 712 F. App'x 719, 720-21 (10th Cir. 2017) (Rule 60(b)(5) "only allows for relief from judgments that have prospective application or effect.") (citing *Dowell ex rel. Dowell v. Bd. of Educ.*, 8 F.3d 1501, 1509 (10th Cir. 1993)). "[T]he requested change should be approached with caution and a strong showing is required of new

---

[28] ECF No. 167-4, pp. 5-6.
[29] Among the reasons given were that the Mexico Judgment "conflicts with another final and conclusive judgment." (ECF No. 166-4, p. 5 at ¶ 5.) It is unknown whether the Dallas Court was referring to this Court's May 9, 2019 judgment affirmed by the Tenth Circuit on April 16, 2021. (ECF Nos. 75, 76, 147, 148.)
[30] ECF No. 167, p. 12 n.10.

conditions and circumstances making the original [judgment] oppressive." *Ridley v. Phillips Petroleum Co.*, 427 F.2d 19, 22 (10th Cir. 1970) (addressing modifying an injunction).

Rule 60(b)(6) motions generally require extraordinary or exceptional circumstances. *See Ackermann v. United States*, 340 U.S. 193, 202 (1950) ("Neither the circumstances of petitioner nor his excuse for not appealing is so extraordinary as to bring him within…Rule 60(b)(6)."); *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America*, 962 F.2d 1528, 1534 (10th Cir. 1992) (extraordinary situations required); Kane at § 2857 ("[T]he leading cases speaking of a requirement of exceptional or extraordinary circumstances have been cases of motions under Rule 60(b)(6)."). "[T]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices the party has made." Kane at § 2864.

The resolution of a Rule 60(b) motion is addressed to the sound discretion of the district court. *Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972).

### 2. Analysis

DynaResources seeks to be relieved from allowing Goldgroup to appoint directors and raises essentially three arguments as to why relief from some of the non-monetary award should be granted. The Court addresses them in turn.

***Goldgroup is Allegedly No Longer a Shareholder***. First, DynaResources asserts the rationale which supports the Arbitration Award no longer exists. Specifically, DynaResources contends Goldgroup sought to protect governance rights afforded to it as a shareholder, when it was a shareholder, through the arbitration proceeding. But, DynaResources asserts, the circumstances have changed because Goldgroup is no longer a shareholder of DynaMexico. Thus, enforcing the non-monetary relief no longer makes sense, is harmful and dangerous to DynaResources, would be inequitable, would effectively nullify the Mexican Foreclosure Judgment on DynaMexico's shares, and would be detrimental to the public interest. These

8

arguments rely on the assertion that Goldgroup is no longer a shareholder of DynaMexico. Goldgroup raises several arguments as to why these arguments fail. The Court agrees, in part, with one.[31]

Goldgroup argues that, as a matter of U.S. law, it remains an owner of DynaMexico. Goldgroup's argument is based on *this Court's* refusal to recognize the Mexico Judgment when it determined to confirm the Arbitration Award and *the Dallas Court's* refusal to recognize the Mexico Judgment awarding a sum of money as an American Judgment.

Goldgroup's reliance on this Court's refusal is unavailing. The Mexico Judgment contained decisions on two issues from two agreements: damages under the MOU and waiver/enforceability of the arbitration provision under the Agreement. When this Court addressed the Mexico Judgment in its May 9, 2019 Order, it was addressing that judgment only as it pertained to the waiver of the arbitration provision. Thus, when this Court stated that the Mexico City Order did not control it was only referring to that portion of the Mexico Judgment addressing arbitration under the Agreement. The Mexico Judgment as it pertained to the MOU was not at issue in this case; therefore, the Court did not address that part of the Mexico Judgment and rendered no opinion as to its application or enforceability.

Goldgroup's reliance on the Dallas Court's refusal, however, is a different matter. The Dallas Court refused to recognize the Mexico Judgment's "recovery of a sum of money"[32] – that part of the judgment addressing the MOU and which DynaResources relied upon to obtain its Mexican Foreclosure Judgment to obtain Goldgroup's shares in DynaMexico. If the Court were to now find – or agree – that Goldgroup is no longer a shareholder, it would implicitly accept (recognize) the Mexico Judgment awarding a sum of money, something the Dallas Court has

---

[31] Therefore, it need not reach Goldgroup's other arguments.
[32] ECF No. 166-4, p. 1 at ¶ 2.

already addressed and refused to do. On this record, DynaResources fails to show that this Court could do so or that it should do so. DynaResources' arguments for relief, therefore, fail.

*Goldgroup is a Competitor.* DynaResources contends that Goldgroup, along with Javier Reyes and Accendo Banco, are competitors; therefore, enforcement of the non-monetary relief would be detrimental to DynaResources' business. DynaResources' assertions, however, are unsubstantiated. As to some assertions, DynaResources fails to provide any evidentiary support. As to other assertions, DynaResources cites to various information contained on the internet. While the Court may, in appropriate circumstances, take judicial notice of matters contained on the internet, *see O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."), DynaResources fails to show the Court can and should do so. And, in light of the disputes in this case, the Court declines DynaResources' invitation to consider information on the internet without further substantiation.

The Court's rationale for its declination is supported by, for example, a review of Goldgroup's website[33] found at https://www.goldgroupmining.com/projects/overview. Here, DynaResources argues that Goldgroup is a competitor because it owns 100% of the Cerro Prieto Gold Mining Project in Mexico. Goldgroup's website does state it owns 100% of the Cerro Prieto mine but that, standing alone, fails to show it is a competitor. Further, the website also states Goldgroup holds a 50% interest in DynaMexico. Of course, the latter is arguable: based on the Mexico Judgment, one could argue that, under Mexican law, Goldgroup holds no interest in DynaMexico. Thus, the Court will not consider the matters contained in the websites

---

[33] DynaResources did not cite to Goldgroup's website but did cite to other websites.

DynaResources relies upon. And, without this information from the internet, there is no support for DynaResources' competitor argument.[34]

*Javier Reyes is Allegedly an Inappropriate Director.* Javier Reyes is one of the individuals whom Goldgroup has requested to be appointed a director of DynaMexico. According to DynaResources, Reyes has been accused of committing various wrongful acts and there are criminal investigations against him. DynaResources does not want someone like Reyes – "who is at the heart of a massive [banking] scandal"[35] – to sit on DynaMexico's board.

To start, DynaResources seeks to support its position of Reyes' alleged mendacity based on various articles published in Mexico retrieved from the internet. The Court has already declined an invitation to base its decision on unsubstantiated articles. Further, the Arbitration Award was based on the bargain (i.e., the Agreement) the parties struck – each party was allowed to appoint two directors. Simply put, DynaResources' allegations that Reyes is a bad actor do not support a finding of extraordinary or exceptional circumstances and fail to show that allowing Goldgroup to appoint him on the board would be inequitable.

### 3. Summary

In summary, DynaResources fails to meet its burden of showing that the Court should grant relief under Rule 60(b)(5) or (b)(6). Accordingly, the third Rule 60(b) motion is denied.[36]

### B. Goldgroup's Motion for Contempt

Goldgroup asserts that DynaResources has flagrantly disregarded this Court's Order by failing to comply with the non-monetary award set forth in the Arbitration Award. It now seeks a

---

[34] The Court also notes that Goldgroup's website indicates that it has owned the Cerro Prieto mine since at least *2013*. Thus, under DynaResources' theory, that ownership equates to being a competitor, Goldgroup was an alleged competitor *before* the Court's Order was issued in 2019. It therefore follows that DynaResources cannot rely on Goldgroup's alleged status as a competitor as a *subsequent* "change in circumstances" to justify relief under Rule 60(b).

[35] ECF No. 171, p. 7.

[36] The Court renders no opinion as to whether it can or may provide DynaResources relief if it is ultimately determined that the Mexico Judgment as to the monetary award is recognized as an American judgment.

civil contempt order against DynaResources. DynaResources contends it has fully complied with the Arbitration Award. The Court agrees with Goldgroup that DynaResources' contention here is at odds with its other representations in this case that it cannot comply, or should not be required to comply, with the non-monetary award. That DynaResources' contentions are contradictory, however, does not answer the question of whether DynaResources has complied. The Court does so here.

### 1. Standard of Review

Sanctions for civil contempt may only be imposed for either or both of the following remedial purposes: "(1) to compel or coerce obedience to a court order, and (2) to compensate the contemner's adversary for injuries resulting from the contemner's noncompliance." *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (quotation marks, ellipsis, and citation omitted). A party seeking a contempt order bears the burden to establish, by clear and convincing evidence, that "[1] a valid court order existed, [2] that the defendant had knowledge of the order, and [3] that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

Once the movant meets its burden, the burden then shifts to the non-movants to show, by clear and convincing evidence, that they either complied with the order or that they could not comply with it. *Id*. at 1317; *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008). Good faith is not a defense in civil contempt. *See Cottriel v. Jones*, 588 F. App'x 753, 757 (10th Cir. 2014) ("[B]ad faith is irrelevant to civil contempt"). "Even if the movant meets its burden of proof, the type, character and extent of relief available is within the trial court's discretion." *Entech Sys., Inc. v. Bhaskar*, 72 F. Supp. 2d 1272, 1276 (D. Kan. 1999) (citing *O'Connor*, 972 F.2d at 1209).

"The district court can impose a sanction to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1239-40 (10th Cir. 2018) (quotation marks, brackets, and citation omitted). The amount of the compensation, however, must be based on actual losses sustained by the movant as a result of the contumacy, *id*. at 1240, which must be established by a preponderance of the evidence. *Reliance Ins. Co.*, 159 F.3d at 1318; *F.T.C. v. Kuykendall*, 371 F.3d 745, 754 (10th Cir. 2004).

The district court can also impose coercive sanctions to compel obedience to a court order but they can remain only until the contemnor complies with the order. *Acosta*, 884 F.3d at 1238-39. Thus, a coercive sanction cannot be imposed on a party currently in compliance. *Id*. at 1239. "In civil contempt, the contemnor is able to purge the contempt by committing an affirmative act to bring [itself] into compliance." *Cottriel*, 588 F. App'x at 757 (quotation marks, ellipsis, and citation omitted).

The district court retains broad discretion in determining whether to exercise its authority to hold a party in contempt. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1236 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001) ("A district court has broad discretion in using its contempt power to require adherence to court orders.").

### 2. Necessity of a Hearing

The Court finds a hearing is not necessary in this case. The record which precedes the Motion for Contempt is extensive and the parties have submitted additional evidence with their briefs for consideration. Neither party has requested a hearing. Goldgroup did ask *the Court* to determine if an evidentiary hearing is necessary.[37] But, based on the record, it appears there is no additional evidence other than what is before the Court. Goldgroup submitted documents in its

---

[37] ECF No. 165, p. 9.

Motion for Contempt and its reply addresses the documents which DynaResources provides in its response brief but provides no additional materials for the Court to consider. Thus, the Court need not hold a hearing before ruling.

### 3.  Civil Contempt

DynaResources does not dispute that Goldgroup has met its burden of proving that a valid court order existed and DynaResources had knowledge of it. The dispute is over whether DynaResources was in compliance with the May 2019 Order by the actions it took in 2020. The Court starts with the scope of the confirmed Arbitration Award.

### a)  Scope of Arbitration Award

In addition to the Six Arbitration Orders, Goldgroup contends that the Court (by confirming the Arbitration Award) also ordered that (1) the Management Committee of DynaMexico continues to exist and shall continue to exist unless and until the parties agree otherwise in writing; and (2) Goldgroup shall hold two of the three seats of the Management Committee. (ECF No. 165, p. 4.) In determining whether an order has been violated, the Court "will not…expand[] [the order] by implication beyond the meaning of its terms when considered in the light of the issues and the purpose for which the suit was brought." *Denver-Greeley Valley Water Users Ass'n v. McNeil*, 131 F.2d 67, 69 (10th Cir. 1942). Thus, the Court examines the demand for arbitration, the claims which the Arbitrator heard and addressed, and that which was awarded on such claims.

 Goldgroup's claims evolved as the arbitration proceeding progressed. By the time of the arbitration hearing, Goldgroup had limited its claims to breach of contract and breach of good faith requesting relief which included declaratory judgment and an accounting.[38] Although

---

[38] ECF No. 2-2, pp. 35 at ¶ 84 (setting forth claims and that Goldgroup is seeking only to recover damages against DynaUSA).

DynaResources argued to the contrary, the Arbitrator found the Agreement remained in effect after Goldgroup purchased its 50% interest in DynaMexico. The Arbitrator stated that the Agreement, "expressly continue[s] to govern certain aspects of the parties' relationship after the stock purchase was completed."[39] The Arbitrator went on to address the two claims as they related to four alleged breaches and related awards, but only one breach is relevant here as to the dispute over the scope of the award.

*DynaResources' alleged breach of obligations concerning the Management Committee under Article 7.9.* Here, the Arbitrator found that "since June 2011, [DynaResources has] refused to work through the Management Committee, and DynaMexico has incurred Expenditures that were not authorized in a Management Committee-approved budget." Therefore, "[b]y disregarding the Management Committee and incurring unauthorized Expenditures, [DynaResources has] breached [its] obligations to Goldgroup under Article 7.9."[40] The Arbitrator then stated DynaResources must account for all Expenditures that DynaMexico incurred since 2011 and that any improper expenditures[41] must be refunded to DynaMexico, which included $1,044,952.46 in legal expenses.

*The "Final Award" under Article 7.9.* With respect to the alleged breach of Section 7.9, the Arbitrator said, as relevant here:

- As provided in Article 7.9 of the Option Agreement, the Management Committee continues to exist, and shall continue to exist unless and until the parties agree otherwise in writing. The Management Committee has all of the authority and responsibilities described in the Option Agreement. Thus, as provided in Article 7.9, the Management Committee has the authority to approve a budget for any "Expenditures".... Any "Expenditures" that are not included in a budget approved by the Management Committee are improper and unauthorized.

---

[39] ECF No. 2-2, pp. 37-38 at ¶ 90; *see also* p. 39 at ¶ 93.
[40] ECF No. 2-2, pp. 44-45 at ¶ 106.
[41] Improper expenditures are Expenditures that had been incurred since 2011 that were not included in a Management Committee approved budget. (ECF No. 2-2, p. 45 at ¶ 108.)

- By no later than 20 calendar days from the date of this Award, Respondents must account to Goldgroup, in writing and with particularity and in detail, for any and all Expenditures that DynaMexico has incurred since June 2011. Further, any Expenditures that have been incurred since June 2011 that were not included in a budget approved by the Management Committee were improper, and must be refunded to DynaMexico….

(ECF No. 2-2, pp. 56-57 at ¶ 133(d).) Read in context, the Arbitration Award does not order the relief Goldgroup seeks.

Here, the breach Goldgroup claimed was the disregard, or bypassing, of the Management Committee and its power to approve and oversee Expenditures through an approved budget. The Arbitration Award addressed the relief sought – an accounting to account for such Expenditures and a refund to DynaMexico of any improper Expenditures. While the *Agreement* provides for a Management Committee and that it is to be comprised of three persons, one designated by DynaUSA and two designated by Goldgroup, the Arbitrator did not order such relief. That is because Goldgroup did not raise this as an issue; therefore, the Arbitrator did not determine or resolve any such issue. *See Terminal R. Ass'n of St. Louis v. United States*, 266 U.S. 17, 30 (1924) (contempt proceedings will not lie on issue not presented or determined by decree). If Goldgroup has grievances concerning the makeup, or related aspects, of the Management Committee set forth in the Agreement, its remedy does not lie in contempt of the Order issued in this action. *See Sportmart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313, 318 (7th Cir. 1979) (if plaintiff still felt aggrieved by defendant's action, its remedy is not to bootstrap such grievance into this lawsuit). Thus DynaResources is not in contempt for refusing to permit Goldgroup to appoint two Management Committee members.[42]

This leaves the Six Arbitration Orders, but Goldgroup seeks contempt for only four of such orders. It does not seek contempt for failing to hold a "joint" shareholders' meeting or

---

[42] Goldgroup does not argue the Management Committee does not exist.

exchanging the names of potential candidates for the fifth director.[43] The Court addresses the four below.

### b) DynaResources' Compliance with the Arbitration Award

DynaResources contends it complied with all the non-monetary award in August 2020, after it foreclosed on Goldgroup's shares in DynaMexico as authorized by orders issued in conjunction with the Mexico City Lawsuit. The Court finds otherwise.

***Goldgroup's Status at the Time of the August 2020 Shareholders' Meeting.*** Under Mexico law, Goldgroup was no longer a shareholder by February 2020. Goldgroup contends that the Mexico Judgment is irrelevant because this Court said so, the Tenth Circuit said so, and the Dallas Court said so. But that is not so.

At the time of the shareholders' meeting, the Dallas Court had not spoken on the issue. The Dallas Court did not do so until May 2021. And, as the Court already discussed above, it only addressed that portion of the Mexico City Order that dealt with arbitrability. The Mexico City Order's concerning the breach of the MOU was not before this Court. It therefore follows that it was also not before the Tenth Circuit. Thus, that portion of the Mexico City Order stood unchallenged in August 2020. But that begs the question of whether, as the matter stands today, DynaResources has violated the May 9, 2019 Order.

***Appointment of Two Directors Chosen by Goldgroup.*** Goldgroup nominated two directors (Reyes and Peralta) and DynaMexico appointed them as directors during the shareholders' meeting. But, in that same meeting, DynaResources appointed "replacement directors" thereby removing the two directors Goldgroup nominated. DynaResources contends its appointment and removal of the directors do not violate the spirit of the Arbitration Award and reflect the reality that Goldgroup was and is no longer a shareholder. Goldgroup counters

---

[43] *See* ECF Nos. 165, 169.

that it had an ongoing right to appoint two directors and DynaResources engaged in contempt when it unilaterally removed the two directors right after seating them. The Court agrees, but only in part.

Goldgroup's arguments mix what is required under the Agreement and what is required under the Arbitration Award. The Arbitration Award did not order *ongoing* rights to appoint to Goldgroup or that, once appointed, the directors cannot be removed. That being said, the Arbitration Award did order the right to appoint. And while DynaResources did appoint the directors Goldgroup nominated, the immediate removal of these directors at the same meeting within minutes of their appointment amounts to no appointment at all.[44] Therefore, the Court agrees that this part of the Arbitration Award was violated.[45]

***Joint Appointment of Fifth Director.*** The Arbitration Award provides that Goldgroup and DynaUSA shall hold a shareholders' meeting for the purpose of appointing the fifth director, with the parties exchanging names of potential candidates for the fifth director. Goldgroup submitted two potential candidates (Guzman and Ruiz). DynaResources considered Guzman and Smith (a person DynaResources apparently nominated). The parties dispute whether they were required to agree to the fifth director. The Court finds that, read in context, the Arbitration Award did require agreement by the parties. The Arbitrator found a breach of Article 7.3 which required "the fifth director to be appointed by agreement" and that DynaResources breached the obligations thereunder by "failing and refusing to work with Goldgroup to appoint the fifth director." Accordingly, DynaResources' unilateral decision to appoint Smith violates this part of the Arbitration Award.

---

[44] The meeting started at 10:00 a.m. and concluded at 10:20 a.m. (ECF No. 167, pp. 9, 15.)

[45] As Goldgroup argues, there appears to be mechanisms by which directors may be removed but which were not followed. The Court, however, renders no opinion concerning any mechanisms for the removal of an appointed board member. Further, to the extent that DynaResources argues that the Agreement should no longer control, the Court renders no opinion concerning whether the Agreement may be terminated or whether any obligations thereunder may otherwise be discharged.

***Accounting of DynaMexico's Expenditures.*** Goldgroup acknowledges that it has received an accounting of DynaMexico's expenditures but argues this was only received recently, in violation of the Arbitration Award which required action to be taken no later than 20 days of the award. Thus, Goldgroup asserts that it should be awarded attorney's fees and expenses incurred in prosecuting this contempt. The Court declines to do so on the basis requested. The Arbitration Award was not an order of this Court until May 9, 2019; therefore, DynaResources could not have been in contempt of this Court's Order prior to that date. Nonetheless, the Court agrees that its Order was violated when DynaResources failed to provide the accounting until June 2021 where there was no stay of the non-monetary relief awarded.

***Payment of Expenditures Ordered.*** DynaResources argues that, under the Arbitration Award, DynaUSA owed $2,067,296.68[46] to DynaMexico and contends it has paid this amount by giving two credits to DynaMexico totaling this amount, thereby reducing the accounts payable to DynaUSA. Goldgroup contends that more than this amount is owed and that DynaResources' alleged offsets/credits cannot constitute payment. The Court finds Goldgroup has failed to meet its burden here.

In footnote 2 of its Reply, filed July 16, 2021, Goldgroup reserves the right to make further objections to the accounting.[47] But more than a month has now passed since Goldgroup's filing without any further objections or request for an extension of time to submit such objections, even though Goldgroup has had the information since June 2021. Thus, the Court finds there are no additional objections to resolve.

---

[46] $1,044,952.46 + $1,022,344.22 = $2,067,296.68. (ECF No. 167, p. 20.)
[47] ECF No. 169, p .8 n.2.

Starting with the amount Goldgroup challenges, here Goldgroup fails to show how or why the amount DynaResources calculated is incorrect. It is axiomatic that simply saying that something is so does not make it so

Next, Goldgroup challenges the legitimacy or validity of the more than $4 million DynaResources contends is owed by DynaMexico to DynaUSA and against which the credits were applied. Goldgroup's reading of DynaResources' arguments differs from the Court's reading. As the Court reads DynaResources' argument, it contends that no approval was required for Expenditures which were funded from the loans from DynaUSA (as opposed to those which were funded from Goldgroup's investments under the Agreement). DynaResources then states that even though it disagrees as to which expenditures required approval, it has nonetheless reimbursed (via credits) all of the expenditures regardless of how they were funded. Goldgroup, however, reads DynaResources' argument to be asserting that no approval was needed in order for DynaMexico to incur a debt. The Court will resolve the issue based on Goldgroup's reading.

Specifically, Goldgroup argues that DynaMexico could not have incurred that debt (the loans it obtained from DynaUSA) without approval by the Management Committee. Goldgroup equates the loans as "Expenditures" which required Management Committee approval. To the extent DynaResources argues that DynaMexico did not need approval in order to incur the debt (obtain loans from DynaUSA), the Court agrees with DynaResources.

Under the Agreement, Expenditures are defined as:

the sum of all costs of maintenance and operation of the SJG Property (including without limitation all maintenance of concessions and rights/interests in the SJG Property), all expenditures on the exploration and development of the SJG Property, and all other costs and expenses of whatsoever kind or nature, including without limitation the Ejido agreement, those of a capital nature, incurred or chargeable with respect to the exploration of the SJG Property, and the placing of the SJG into commercial production.

20

(ECF No. 21-3, p. 3, Article 1.4.) The Management Committee's authority is to "oversee the Expenditures" and that "[a]ll Expenditures shall be expended in accordance with a budget approved by the Management Committee prior to such expenditure." (*Id*. at Article 7.9.) Plainly, under these Articles, while the loans were used to pay expenditures, the loans themselves were not expenditures within the meaning of Article 1.4. Therefore, Goldgroup fails to establish, by clear and convincing evidence, that DynaResources violated this part of the Arbitration Award.

### 4. Sanctions

#### a) Compelling Compliance

Goldgroup seeks an order to compel DynaResources to fully comply with the non-monetary relief contained in the Arbitration Award. The Court finds Goldgroup has shown noncompliance only as to the appointment of two directors, the joint appointment of a fifth director, and the timeliness of providing the accounting. The Court starts with the accounting.

***The accounting.*** As stated, a coercive sanction cannot be imposed on a party currently in compliance. *Acosta*, 884 F.3d at 1239. The accounting was delayed but has nonetheless now been completed. Thus, no sanction will be issued.

***The Appointment of Directors.*** "Where the purpose of the sanction is 'coercive,' the court must consider 'the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *O'Connor*, 972 F.2d at 1211 (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)). The Court must exercise "the least possible power adequate to the end proposed." *Id.* (quoting *Spallone v. United States*, 493 U.S. 265, 280 (1990)).

In light of the Dallas Court's nonrecognition of the Mexico Judgment, the Court finds coercive sanctions should enter ordering that such appointments be made. To do otherwise would

be contrary to the Arbitration Award, to the affirmance by the Tenth Circuit of this Court's Order confirming that award, and to the Dallas Court's order denying recognition of the Mexico Judgment. The Court's rationale is as follows.

The Agreement addresses how Goldgroup may purchase shares of DynaMexico stock, the rights the shareholders of DynaMexico, and the governance of DynaMexico, all in relation to the parties' exploration and development of the SJG Property. The Arbitration Award, read as a whole, supports DynaResources' argument that Goldgroup sought arbitration to vindicate its rights as a shareholder of DynaMexico and to enforce the terms and conditions of the Agreement in protection of such rights. Indisputably, under Mexican law, Goldgroup is no longer a shareholder of DynaMexico. And if those were the only relevant facts before the Court, it would find that "the character and magnitude of the harm threatened by continued contumacy" would be none. Therefore, sanctions would not be warranted. But those are not the only relevant facts.

The Dallas Court has ruled that the Mexico Judgment cannot and will not be recognized as an American Judgment. Thus, under U.S. law, Goldgroup is still a shareholder and the harm would be significant if it would have no say in a project in which it has an interest. The Court recognizes DynaResources' appeal of the Dallas Court's decision is pending and, if reversed, may result in the recognition that Goldgroup is not a shareholder. But that would involve speculation into what may or may not occur in an indeterminate period of time. The Court finds no authority to support that it may consider such a speculative event and disregard what the Dallas Court has determined.

In light of the foregoing, the Court orders that, within 90 days of the date of this Order, DynaResources and Goldgroup shall hold a shareholders' meeting where (1) Goldgroup may appoint two directors to the Board of Directors of DynaMexico and (2) the parties shall appoint the fifth member as required under Article 7.3 of the Agreement. To be clear, the Court

expresses no opinion as to the ability of any party to subsequently remove any director under the Agreement or otherwise. The Court only finds that DynaResources' August 2020 appointment and immediate removal (with no explanation or otherwise) of Goldgroup's directors fail to comply with the Arbitration Award.

### b) Attorney's Fees

The only compensatory sanction Goldgroup request is the fees and costs associated with bringing the Motion for Contempt. The Court agrees that an award of reasonable attorney fees and costs is appropriate based on DynaResources' noncompliance. *See John Zink Co. v. Zink*, 241 F.3d 1256, 1262 (10th Cir. 2001) ("willfulness is not required to award attorney fees in a civil contempt proceeding"); *Frederick on behalf of LF v. Panda No. 1, LLC*, No. 17-CV-0420-WJM-KMT, 2018 WL 4627105, at *5 (D. Colo. Sept. 26, 2018) ("It is well established that complainant may recover attorneys' fees and expenses incurred in prosecuting a contempt." (quotation marks and citations omitted)). Goldgroup has not provided such fees and costs for the Court's consideration. The Court directs Goldgroup to do so in compliance with the requirements under Fed. R. Civ. P. 54 and D.C.COLO.LCivR 54.3, after meaningful conferral with DynaResources. The parties are directed to confer in good faith to reach a resolution of the amount of fees and costs to be awarded, which shall include the amounts incurred on the motion for fees and costs to be filed.

### III.   CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That DynaResources' Motion for Relief from Judgment (ECF No. 166) is DENIED;

(2) That Goldgroup's Motion for Contempt (ECF No. 165) is GRANTED IN PART and DENIED IN PART as stated herein;

(3) That, on or before **October 1, 2021**, after meaningful conferral with DynaResources, Goldgroup shall file its motion for attorney's fees setting forth the amount of fees and costs requested and the result of the parties' conferral efforts;

(4) That, on or before **December 2, 2021**, DynaResources and Goldgroup shall hold a shareholders' meeting where (a) Goldgroup may appoint two directors to the Board of Directors of DynaMexico and (b) the parties shall appoint the fifth member as required under Article 7.3 of the Agreement; and

(5) That Goldgroup's Motion for Leave to File Surreply (ECF No. 172) and Amended Unopposed Motion for Leave to File Surreply (ECF No. 173) are DENIED AS MOOT.

DATED this 3rd day of September, 2021.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge